34 F.3d 1068
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Susan McCORMACK, Plaintiff-Appellant,
v.
Anthony M. FRANK, Postmaster General, Defendant-Appellee.
 No. 93-5416.
 United States Court of Appeals, Sixth Circuit.
 Aug. 10, 1994.
 
 Before: MERRITT, Chief Judge; and MILBURN and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Susan McCormack, appeals the decision of the district court granting defendant, the Postmaster General, summary judgment in McCormack's Title VII sex-discrimination suit. On appeal, McCormack contends that the district court erred in finding that she submitted no evidence to refute defendant's legitimate reasons for not recommending and reassigning her to higher grade positions.
 
 
 2
 For the following reasons, we affirm the decision of the district court.
 
 I.
 
 3
 In 1986, McCormack was employed by the Postal Service as a Program Manager for Customer Programs at the Southern Regional Headquarters in Memphis, Tennessee. Her grade was Executive Administrative Schedule ("EAS")--23. In April 1986, as part of a large-scale reorganization, the Postal Service reduced the number of positions at the Regional Headquarters from around 500 to 60. McCormack's position was among those eliminated.
 
 
 4
 The reorganization divided the Southern Region into fourteen geographical divisions, and each division would have one Field Director for Marketing and Communications. McCormack sought promotion and reassignment into one of these Field Director positions. To apply, McCormack submitted a completed Form 991, a standardized form resume, to her immediate supervisor. She expressed a preference for five cities within the Southern Region (Tampa, Jacksonville, Nashville, San Antonio, and Dallas) and sent copies of her Form 991 to the Field Division General Managers in those cities. McCormack interviewed for the Field Director position in two of the five cities she preferenced, Tampa and San Antonio, but was not chosen for any of the fourteen Field Director positions.
 
 
 5
 The Field Director positions sought individuals with marketing, sales management, and communications experience. Additionally, as McCormack was aware, members of the Postal Career Executive Service ("PCES") were to be given first priority in filling the Field Director Positions. Only after PCES executives and PCES candidates were considered would EAS employees such as McCormack be considered. While McCormick was neither a PCES executive nor a PCES candidate, she contends that she had extensive experience in the areas of marketing, sales management, and communications and that she was well-qualified for the Field Director positions. In the five cities that McCormack preferenced, three men and two women were chosen for the Field Director positions; all three of the men were either PCES executives or PCES candidates.
 
 
 6
 Following the announcement of those chosen for the Field Director positions, McCormack filed an EEO complaint alleging sex discrimination. In June 1986, McCormack had not yet found a new position within the Postal Service. She met at least twice with her supervisor, Deborah Bowker, Regional Director of Marketing and Communications, to discuss possibilities for reassignment, including postmaster positions. Bowker told McCormack that she could not recommend her for reassignment to a postmaster position higher than EAS-18. Bowker was aware that McCormack had filed an EEO complaint. It does not appear that McCormack actively pursued any postmaster positions. Following her discussions with Bowker, McCormack filed a second EEO complaint alleging that Bowker's statement was made in retaliation for her earlier EEO complaint. McCormack was eventually assigned to an EAS-17 position as a Retail Programs Specialist in Tampa, Florida.
 
 
 7
 In June 1989, an administrative hearing was held on McCormack's EEO complaints. During that hearing, defendant produced evidence that McCormack lacked the qualities that the Postal Service was looking for in its new Field Directors of Marketing and Communications. In addition to McCormack's lack of PCES status, Bowker said that McCormack did not exercise good judgment and did not manage projects well.
 
 
 8
 McCormack testified that Bowker's assessment of her qualifications and abilities was pretextual, claiming that Bowker had no adequate opportunity to observe and form a legitimate perception. Instead, McCormack alleged that she was not assigned to one of the Field Director positions because of a male postmaster who had sexually abused and harassed her "for years." McCormack contended that male friends of this postmaster "blackballed" her and precluded her from advancement. McCormack further stated that, in selecting the Field Directors of Marketing and Communications, the Field Division General Managers bypassed published procedures, solicited most candidates outside the application process, and selected first and interviewed later; according to McCormack, the principal criteria in selecting the Field Directors was word-of-mouth recommendations among male managers. She presented evidence that the General Managers conducted a "hiring hall" in Olive Branch, Mississippi, that was predominantly attended by men.
 
 
 9
 At the administrative proceeding, McCormack also asserted that since she was not hired as a Field Director, she should have been offered a postmaster position. McCormack claimed that she was not hired as a postmaster because she had filed an EEO complaint. The Administrative Law Judge recommended a decision that no discrimination had occurred. In October 1989, the Postal Service issued a final decision finding no discrimination.
 
 
 10
 In November 1989, McCormack filed the present civil action, claiming the Postal Service had refused to promote her because of her sex, assigned her to a lower position because of her sex, and retaliated against her for filing an EEO claim. In a thorough and well-reasoned decision, the district court granted the Postmaster General's motion for summary judgment on all claims. As to the sex discrimination claim, the district court found that McCormack produced no evidence to overcome the defendant's non-discriminatory reasons for not choosing her as a Field Director; similarly, the district court dismissed McCormack's retaliation claim because she submitted no evidence to overcome the defendant's position that Bowker was legitimately motivated by her perception of McCormack's inferior management skills--not by McCormack's EEO complaint--in not promoting her to a higher grade postmaster position.
 
 II.
 
 11
 Summary judgment is proper where there exists "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A moving party is entitled to summary judgment if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Id. at 324 (quoting Fed.R.Civ.P. 56(e)). On appeal, a district court's summary judgment determination is reviewed de novo, Pinney Dock and Transp. Corp. v. Pennsylvania Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988), with all facts and inferences viewed in the light most favorable to the nonmoving party, White v. Turfway Park Racing Ass'n, Inc., 909 F.2d 941, 943 (6th Cir.1990).
 
 
 12
 McCormack's Title VII discrimination claim is one of disparate treatment,[1] and proof of such a claim requires a showing of discriminatory intent. Grano v. Department of Dev. of Columbus, 637 F.2d 1073, 1081 (6th Cir.1980). Initially, a plaintiff must make a prima facie showing that raises an inference of unlawful discrimination. To make a prima facie showing of discrimination, a plaintiff must show that: (1) she belongs to a minority group, (2) she applied for and was qualified for a job for which the employer was seeking applicants, (3) despite her qualifications, she was rejected, and (4) after her rejection the job remained open and the employer continued to seek applicants with plaintiff's qualifications. Id. at 1079 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). The defendant can then rebut the presumption of discrimination by articulating a legitimate non-discriminatory reason for failing to hire or promote the plaintiff. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). If the defendant produces a legitimate non-discriminatory reason, the plaintiff then must prove that the articulated reason is false or pretextual. St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2747-48 (1993); Grano, 637 F.2d at 1079.
 
 
 13
 While McCormack arguably has shown a prima facie case of disparate treatment, she has not shown that the defendant's non-discriminatory reason for not hiring her is illegitimate. A review of the record indicates that the district court properly found that McCormack failed to prove that the reason for her non-selection for the Field Director positions was her sex. Essentially two reasons were given by the Postmaster for McCormack's non-selection: her lack of PCES status and Bowker's assessment of McCormack's management skills. It is undisputed that McCormack was neither a PCES executive nor a PCES candidate, and by McCormack's own calculations, eight of the fourteen persons selected to be Field Directors were either PCES executives or PCES candidates. Though McCormack contends that a disputed issue of fact and law exists as to whether Bowker's perception of McCormack's abilities was pretextual, McCormack presented no evidence suggesting the Bowker's perception was either pretextual or motivated by any discriminatory animus. Additionally, McCormack submitted no evidence supporting her allegation that the main criteria for selecting Field Directors was by affinity among male supervisors.
 
 
 14
 McCormack contends that no basis existed for Bowker's negative assessment. However, Bowker testified at the administrative hearing that her perception of McCormack's abilities was based on both personal experience and on the evaluations of others who had worked directly with McCormack. Bowker referred to evaluations from several individuals who had worked with the McCormack as well as projects that she, herself, had worked on with McCormack. McCormack presented no evidence legitimately disputing this testimony.
 
 
 15
 In an effort to rebut the defendant's non-discriminatory reasons for McCormack's non-selection, McCormack asserts that Emmett Cooper, a postal supervisor who McCormack alleges sexually harassed her in the past, influenced other postal supervisors, in effect "blackballing" her. However, McCormack did not make this claim until 1989, three years after she filed her EEO complaints. Accordingly, McCormack's sexual harassment claims are beyond the scope of the EEOC's investigation, and the district court properly declined to consider those claims. See Farmer v. ARA Services, Inc., 660 F.2d 1096, 1105 (6th Cir.1981) ("The rule in this circuit is that the complaint and the judicial proceedings [in Title VII cases] are limited not to the words of the EEOC charge but to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."); EEOC v. Bailey Co., 563 F.2d 439, 446 (6th Cir.1977), cert. denied, 435 U.S. 915 (1978).
 
 
 16
 McCormack further contends that disputed issues of fact and law exist as to whether she favorably compared to the fourteen selectees for the Field Director positions, whether most of the selectees and the selecting officials were men, and whether published procedures were followed. However, none of these factual issues, even if they were all resolved in McCormack's favor, negates the fact that she was unable to overcome the defendant's showing of a legitimate non-discriminatory reason for McCormack's non-selection.
 
 
 17
 Whether McCormack was as qualified as or more qualified than any of the selectees is irrelevant; what matters is Bowker's perception of McCormack's qualifications. See Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir.1988) ("It is the perception of the decision maker which is relevant, not plaintiff's perception of herself."). As to statistical evidence regarding the number of male selectees and the number of male selecting officials, McCormack does not provide sufficient evidence to suggest either intentional discrimination or a "gross disparity between the composition of [the] work force and that of the general population." International Brotherhood of Teamsters v. United States, 431 U.S. 324, 340-41 n. 23 (1977). Finally, McCormack's claim that the defendant failed to follow published hiring procedures has no bearing on the non-pretextual nature of Bowker's articulated reason for not selecting the plaintiff. Gibson v. Frank, 946 F.2d 1229, 1232 (6th Cir.1991) (violation of regulations, itself, does not provide basis for private cause of action under Title VII). Regarding McCormack's claim that few women attended the Olive Branch meeting, while the meeting may have been a departure from published procedures, McCormack presented no evidence raising an inference that sex discrimination was more likely the reason that defendant held the meeting. As the district court noted, the Olive Branch meeting was for PCES executives, most of whom happened to be male, and McCormack herself confirmed that most of those present at the Olive Branch meeting were PCES executives.
 
 III.
 
 18
 McCormack contends that she was denied promotion to higher grade postmaster positions because of her initial EEO claim regarding the Field Director selections. To establish a prima facie case of retaliation under Title VII, the plaintiff must show that: 1) she engaged in protected activity, 2) the defendant knew of the protected activity, 3) the defendant took employment action adverse to the plaintiff, and 4) there was a causal connection between the protected activity and the adverse employment action. Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir.1990). Once the prima facie case is established, the defendant has the burden of producing a legitimate non-discriminatory reason for failing to hire or promote the plaintiff. Burdine, 450 U.S. at 254-55. The plaintiff must then demonstrate that the defendant's articulated reason is not the true reason for defendant's action. Id. at 256.
 
 
 19
 The district court properly granted the defendant summary judgment on this claim as no dispute as to any material fact existed. Fed.R.Civ.P. 56(c). As with McCormack's initial discrimination claim, she has failed to produce any evidence to indicate that she was denied the higher-grade postmaster position for any reason other than Bowker's perception that she possessed inferior management skills. Nothing was put forward to suggest that this perception was either pretextual or motivated by a desire to retaliate against McCormack for engaging in protected action.
 
 
 20
 In conjunction with McCormack's reprisal claim, she contends that a factual dispute exists as to whether she actually applied for any postmaster positions. However, this contention is immaterial to the larger issue of whether Bowker's assessment of McCormack's managerial abilities was driven by an illegitimate purpose. As a result, whether a dispute exists as to this fact has no bearing on the propriety of summary judgment on this claim.
 
 IV.
 
 21
 On September 26, 1991, McCormack filed a motion to amend and supplement her complaint "to show that the discrimination inflicted on her in Memphis was communicated and relayed to Florida postal officials." The district court denied the motion on December 11, 1991, finding that granting McCormack's motion would have required the reopening of discovery, causing further delay of the trial. On appeal, McCormack contends that the district court should have granted her motion. McCormack asserts that this alleged continuing discrimination is encompassed within her claims of discrimination.
 
 
 22
 The granting or denial of motions under Fed.R.Civ.P. 15(a) to amend pleadings after responsive pleading have been served and of motions under Fed.R.Civ.P. 15(d) to supplement pleadings is within the sound discretion of the trial court. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971); Caldwell v. Moore, 968 F.2d 595, 598-99 (6th Cir.1992); Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 743 (7th Cir.1985). Given the delay that would have resulted from granting McCormack's motions at that late date, we find no abuse of discretion in the district court's denial of the motion.
 
 
 23
 Finding plaintiff's assignments of error to be without merit, the decision of the district court is hereby AFFIRMED.
 
 
 
 [1]
 On page 22 of her initial brief, McCormack states that "the selection process adversely impacted against women," thereby suggesting a disparate impact argument. However, such an argument, raised at this point in the proceedings comes too late, and we will not consider it. See Hazelwood School District v. United States, 433 U.S. 299, 306 n. 12 (1977)