83 F.3d 422
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dorothy HUSTON, Plaintiff-Appellant,
v.
TENNESSEE STATE BOARD OF REGENTS and Nashville State
Technical Institute, Defendants-Appellees.
 No. 94-6579.
 United States Court of Appeals, Sixth Circuit.
 April 22, 1996.
 
 Before: KEITH, NELSON, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a judgment for the defendants in a case brought under Title VII of the Civil Rights Act of 1964. After a bench trial, the district judge concluded that although the plaintiff had made out a prima facie case of a racially-based termination of employment, she had failed to prove that the defendants' proffered justification--a reduction in force prompted by legitimate budgetary considerations--was a mere pretext.
 
 
 2
 It is undisputed that the criteria used by the defendants in implementing the reduction in force had not been reduced to writing, as required by an internal guideline. The plaintiff contends that this circumstance precludes the defendants, as a matter of law, from prevailing on their affirmative defense. She also contends that the failure to follow the guideline had a "disparate impact" upon her. We do not find either of these contentions persuasive, and we shall affirm the judgment of the district court.
 
 
 3
 * In January of 1990 the plaintiff, Dr. Dorothy Huston, was hired for the dual position of Assistant Dean for Admissions and Records and Affirmative Action Officer at defendant Nashville State Technical Institute, an institution under the control of defendant Tennessee State Board of Regents. The responsibilities of the assistant deanship accounted for about 70 percent of the plaintiff's time, and the affirmative action responsibilities the remaining 30 percent. In the fall of 1991, in the midst of severe budgetary problems, the interim president of the university formed a committee to recommend ways to reduce spending. As a result of the committee's recommendations, the plaintiff's position--like the positions of eleven lower level employees--was eliminated in May of 1992.
 
 
 4
 The plaintiff's trial evidence included testimony from two administrative officials to the effect that the institution lacked a commitment to diversity; testimony by Dr. Huston that she experienced resistance from other administrators in her efforts to increase faculty and student minority participation in school activities; evidence that Dr. Huston was denied an evaluation by her primary supervisor despite a specific request therefor; and evidence that at the time of her discharge Dr. Huston was the only black senior level administrative employee, while hers was the only administrative position eliminated. This, the court found, sufficed to establish a prima facie case of racially-based discrimination.
 
 
 5
 Applying the burden-shifting approach developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the court found that the presumption created by the prima facie case was rebutted by the defendants' evidence of a legitimate need for the reduction in force. In this regard the court found that the university was suffering severe financial difficulties. At the time the committee was formed there had been budget deficits in each of the last three years, and a deficit was projected for the 1991-1992 fiscal year as well.
 
 
 6
 The plaintiff could not show that the defendants' proffered justification was a mere pretext, the court found. It is true that the final figures for 1991-1992 reflected a budget surplus. The surplus was only achieved, however, after the administration had taken actions to freeze expenditures and to cut costs. It was also true that certain Tennessee State Board of Regents personnel received substantial salary increases in the eighteen months following the plaintiff's discharge. But the increases did not support the plaintiff's argument, the court explained, because the salaries of personnel directly under the Board of Regents were funded under an appropriations process that was separate from the process through which the plaintiff's position was funded.
 
 
 7
 The court found the plaintiff's other allegations of adverse treatment equally unconvincing. For example, the reason the plaintiff was not given a performance evaluation by her direct supervisor was not because of any discriminatory animus, but because her supervisor believed that she was to receive such an evaluation from the university president. Nor was it determinative that the university had not fully complied with a Tennessee State Board of Regents' policy requiring specific written criteria for the elimination of positions. The policy provided as follows:
 
 
 8
 "Each institution or school shall develop a consistent and equitable method of notifying and terminating non-faculty employees in the event that a reduction in force, reorganization or elimination of any occupational classification within a unit becomes necessary. The method should include a review of the institution's or school's operations, identification of the functional area(s) affected, a review of the budgetary implications involved, and development of the specific written criteria to be used in identifying the duties that will be reassigned and/or eliminated in the event of a reduction." (Emphasis supplied.)
 
 
 9
 The court found that although the committee did not reduce its criteria to writing, the procedure was followed in all other respects. The committee, the court explained, determined that to achieve savings it was necessary to reduce recurring costs, such as administrative personnel costs. Testimony at trial established that the committee had used a "function" approach to determine which positions should be eliminated. The committee sought to target those positions that were "nonessential," including positions the responsibilities of which could be absorbed by other employees. The court concluded that the plaintiff's position was one that basically entailed the supervision of department heads, and thus could be eliminated without adversely affecting direct services to students. Another dean was able to take over the plaintiff's personnel duties, and the plaintiff's affirmative action responsibilities were shifted to another administrator.
 
 II
 
 10
 We do not find the district court's factual findings to be clearly erroneous, and the plaintiff does not contend they were. The plaintiff argues, rather, that as a matter of law a defendant can never justify a discharge when it has failed to follow its own guidelines and has utilized a "subjective" procedure. We disagree. Certainly the fact that an employer has failed to follow internal guidelines may be evidence that a proffered explanation is a mere pretext. By itself, however, such a fact is not necessarily sufficient to establish pretext. This is particularly true here, where the trial court found that the committee followed the substance of the guidelines and only erred in failing to put its criteria in writing.
 
 
 11
 The plaintiff also argues that this is a disparate impact case, like Watson v. Fort Worth Bank & Trust, 487 U.S. 977 (1988), and that the defendants bear the burden of establishing a business necessity for disregarding their own procedures. But this is not a disparate impact case. The plaintiff's evidence at trial focused upon alleged discriminatory acts directed primarily at the plaintiff. The plaintiff did not allege that a facially neutral policy of the defendants had a disparate impact upon minority employees.
 
 
 12
 AFFIRMED.