**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0481n.06
Filed: July 10, 2006

**No. 05-5250**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

CECIL FELDER,

     Plaintiff-Appellant,

v.

NORTEL NETWORKS CORP.,

     Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

                                   /

**BEFORE:**     **BATCHELDER, CLAY, and McKEAGUE, Circuit Judges.**

     **CLAY, Circuit Judge.** Plaintiff Cecil Felder appeals from the December 30, 2004 order

of the United States District Court for the Middle District of Tennessee granting summary judgment

to Defendant Nortel Networks Corporation ("Nortel") on Plaintiff's suit for racial and age

discrimination in employment under Title VII, 42 U.S.C. § 1981 *et seq.,* the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*, and the Tennessee Human Rights Acts

("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.* We **AFFIRM** the district court's grant of summary

judgment for Nortel.

**I.**

**BACKGROUND**

## A. Substantive Facts

Plaintiff's allegations surround the 2001-2002 decision by Nortel to close its principal Nashville, Tennessee office and Nortel's subsequent decision to outsource the accounting function in which Plaintiff worked.

Nortel underwent a company-wide restructuring between 2001 and 2003 which resulted in a workforce reduction from around 95,000 employees to 36,000 employees. Before the restructuring, Nortel's Tax Department was spread amongst several offices, including the Nashville and Raleigh, North Carolina offices. Nortel's Tax Department was structured into three groups, the Sales and Use Tax group, the State Income and Property Tax group, and the Federal Income Tax group. Plaintiff was hired in 1999 as a Senior Tax Analyst to work in the Nashville office in the Sales and Use Tax group. Prior to joining Nortel, Plaintiff had worked for the Ohio Department of Taxation in its Sales and Use Tax Division. Plaintiff had worked for the Ohio Department of Taxation since receiving his Bachelor's degree in Business Administration with a concentration in Accounting in 1986.

As part of its workforce restructuring and cost-cutting measures, in late 2001 Nortel decided to close the Nashville office in which Plaintiff worked. The majority of Nortel's Sales and Use Tax work was performed in the Nashville office. Initially, Nortel decided to transfer all Nashville tax work to the company offices in Raleigh. Nortel gave Nashville Tax Department employees the option of transferring to Raleigh or staying on with Nortel in the Nashville office until its closure in exchange for a "pay-to-stay" bonus. Plaintiff accepted the offer of transfer, which the company confirmed in writing. The confirming letter stated that Plaintiff was being transferred to Raleigh to work for Nortel in his "current position." (J.A. at 151.) Plaintiff maintains that "current position"

2

meant merely as a Senior Tax Analyst in the Tax Department, while Nortel maintains that "current position" meant Senior Tax Analyst in the Tax Department and working in the Sales and Use Tax group. After the agreement to transfer, Plaintiff took steps to secure housing in Raleigh.

In March 2002, Nortel decided to further reduce costs by outsourcing the bulk of its Sales and Use Tax work in lieu of transitioning the work to Raleigh. Nortel therefore eliminated the Sales and Use Tax group entirely. Nortel then rescinded Plaintiff's transfer and reimbursed Plaintiff for costs incurred in preparing to make the move. Plaintiff alleges that he asked Nortel management whether Raleigh had any openings to which he could apply and that management told him Raleigh had no openings. Plaintiff stayed on in the Nashville office until April 30, 2002 and received severance pay through June 2002.

During his time at Nortel, Plaintiff alleges that, although he never heard a racially derogatory comment, he believes he was treated less favorably than his white counterparts. Plaintiff argues that during his time at Nortel his management was based on a "white culture" in which Plaintiff was "treated differently" than his white counterparts, receiving subpar assignments, unfair evaluations, and lack of recognition for Plaintiff's work. (Pl. Br. 7, J.A. at 210-12.) Plaintiff's performance evaluations rated Plaintiff as "meets expectations" in each year that they were performed. No evidence is in the record to compare Plaintiff's evaluations to those of his colleagues in the Tax Department.

No personnel from the Sales and Use Tax group in Nashville were transferred to Raleigh with the exception of Michele Haney, who was promoted to the position of State Income Tax Compliance Manager. When Nortel first offered Nashville Tax Department employees an opportunity to transfer to Raleigh, Haney expressed an interest in transferring only if the transfer

3

included a promotion. Haney had worked at Nortel since March 2000. Haney testified that she had previously made known to Nortel management her desire to advance in the company. Haney further testified that she had made known to Nortel management her prior experience in income tax issues.

After initial discussions in late Fall 2001, Haney affirmatively contacted a Sandra Carroll, then-Director of U.S. Tax at Nortel, on a regular, even weekly, basis to inquire about potential promotional opportunities in the Raleigh office. As a result of these contacts, Carroll informed Haney of the upcoming opening for State Income Tax Compliance Manager in Raleigh. When the job was posted on Nortel's internal job site, Carroll informed Haney of the official opening and entered Haney's name as the "preferred" candidate for the position. Haney testified that Haney, and not Carroll, always initiated these discussions. The position entailed working "independently, without direct supervision" to fulfill a long list of duties related to state income and franchise taxes. (J.A. at 295.) Haney's position prior to her role at Nortel involved state income tax work. Haney was also a CPA and had been working in the tax field since 1991.

Nortel introduced into evidence an automatically generated "reply" email which indicated that the position was posted on the internal Nortel job site on January 9, 2002. No party was able to produce evidence of when this position was taken off the intranet site. Haney was offered the position in late January 2002 without undergoing a formal interview process. Plaintiff did not apply for the position. Plaintiff now questions whether the position was posted at all, but produces no evidence in this regard.

Meanwhile, Nortel was hiring Senior Tax Analysts and Tax Analysts for its income tax groups down in Raleigh. During the first half of 2002, Nortel hired a number of Tax Analysts and Senior Tax Analysts in the Raleigh offices to work in the Federal Income Tax and the State and

4

Franchise Tax groups. From March 2002 through April 2002 four Senior Tax Analysts and three Tax Analysts were hired from external sources to work in the income tax groups in Raleigh. Of these seven hires, all were white and under the age of forty. Six out of the seven had either a CPA or a relevant Master's degree. All had experience in income tax accounting work, and all had public accounting experience. The sole hire without a CPA or Master's degree, April Brantley-Day, had experience specifically in performing state and local income tax audits, the function for which she was hired in Raleigh.

During this time, Plaintiff became aware of the hires taking place in Raleigh. Plaintiff alleges that he had checked the internal job site periodically since early March, but had done so only infrequently because of management's representation that no jobs were available in Raleigh. Plaintiff went on the internal job site on both April 22 and April 23, 2002. On April 22, an opening for Senior Tax Analyst was listed for Raleigh, and the listing indicated that April 22 was the first day the job was posted online. On April 23, 1990, a snapshot of the job site did not list the Senior Tax Analyst Position. Plaintiff presents these snapshots has evidence that Nortel did not follow normal posting procedures for the hires in Raleigh. Plaintiff did not apply for the position listed as open in the April 22 snapshot, however, nor does he allege that he attempted to apply for the position.

Beyond the seven hires as Senior Tax Analysts and Tax Analysts in Raleigh, Nortel presents evidence that two persons over the age of 40 were hired in Raleigh during the same time period, one for the Federal Tax Manager position and another for the IRS Exam Manager position. The hiring manager testified to recalling that she interviewed one African-American female for an analyst

5

position who was not hired. There is no evidence in the record to supply the race or age profile of all applicants or the industry more generally.

Before the closure of the Nashville office, at least two people worked in the Sales and Use Tax group in Raleigh. Debbie Lee was a Senior Tax Analyst in the group, and Mike Snyder was the group manager in Raleigh. Snyder, a white male, was eventually laid off in October 2002 after the Sales and Use Tax work was fully transitioned to the outside accounting firm. Nortel management testified that Snyder would have liked to have remained with Nortel, but that Nortel did not find him qualified to work in the income tax group, despite being a manager in the Sales and Use Tax area. Debbie Lee was not laid off, however. Nortel retained Lee in her Senior Tax Analyst position in Raleigh to coordinate the front-end, internal gathering of information related to Sales and Use Tax that was still necessary despite the use of the outside accounting firm. Nortel did not consider Lee's position a "new" position, and no job posting was ever made for her role.

## B.      Procedural History

After an unsuccessful Equal Employment Opportunity Commission action, Plaintiff received a right to sue letter and thereafter filed the instant action in the Middle District of Tennessee on July 24, 2003, alleging age and racial discrimination by Nortel in violation of both federal and state law. After a period of initial discovery, Nortel filed a motion for summary judgment, and Plaintiff opposed. In an order dated December 30, 2004, the district court entered summary judgment for Nortel, finding that Plaintiff had failed to put forth a *prima facie* case of racial or age discrimination, and that Plaintiff had additionally failed to present sufficient evidence of pretext. Plaintiff timely appealed on January 28, 2005.

## II.

## DISCUSSION

**A.     Standard of Review**

This Court reviews a district court's grant of summary judgment *de novo*. *See DePiero v. City of Macedonia*, 180 F.3d 770, 776 (6th Cir. 1999). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A dispute as to a material fact is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). As the party moving for summary judgment, Nortel bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Plaintiff's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In considering Nortel's motion for summary judgment, this Court accepts Plaintiff's evidence as true and draws all reasonable inferences in his favor. *Id.* If, as the nonmoving party, however, Plaintiff fails to make a sufficient showing on an essential element of the case with respect to which he has the burden, Nortel is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 322-23.

**B.     Summary**

Plaintiff argues that Nortel discriminated against him on the basis of race and/or age in 1) failing to allow Plaintiff the opportunity to compete for the Tax Analyst and Senior Tax Analyst positions in Raleigh, 2) failing to allow Plaintiff to compete for the position filled by Debbie Lee

7

in Raleigh, and 3) failing to allow Plaintiff to compete for the promotion to State Income Tax Compliance Manager.

We agree with the district court that Plaintiff has failed to produce sufficient evidence such that a reasonable jury could conclude that Nortel's rational explanations for its employment actions were mere pretext for racial or age discrimination. Because Plaintiff cannot show pretext, we need not address whether Plaintiff met his burden of establishing his *prima facie* case.

**C.      Title VII, ADEA, and Tennessee State Law Discrimination Claims**

Plaintiff alleges that Nortel's actions are unlawful discrimination pursuant to Title VII, the ADEA, and the THRA. The standard for proving discrimination under these three statutes is identical: "Except for substitution of the word 'age' for the words 'race, color, religion, sex, or national origin,' the language of that provision in the ADEA is identical to that found in § 703(a)(2) of the Civil Rights Act of 1964 (Title VII)." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005); *see also Anthony v. BTR Automotive Sealing Sys., Inc.*, 339 F.3d 506, 514-15 (6th Cir. 2003). The Supreme Court has noted that its "interpretation of Title VII . . . applies with equal force in the context of age discrimination, for the substantive provisions of the ADEA were derived in *haec verba* from Title VII." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (internal quotation omitted). Finally, "[THRA] claims are governed by the same burden-shifting standards as the claims under Title VII." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001). Consequently, this Court applies the *McDonnell-Douglas* burden-shifting framework to evaluate all of Plaintiff's discrimination claims.

**D.      Legal Standard for Disparate Treatment Claims**

8

In Title VII, ADEA, and THRA cases, a plaintiff bears the ultimate burden of persuading the factfinder that the defendant intentionally discriminated against the plaintiff. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Unlawful discrimination need not be the only reason for an adverse employment action, but rather need only be an essential component of an employer's mixed motive. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240-41 (1989). A plaintiff may carry the burden by introducing direct evidence which shows that in treating a plaintiff adversely the defendant was motivated by discriminatory intent, or by introducing circumstantial evidence that supports an inference of discrimination. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566-67 (6th Cir. 2001).

Where, as here, Plaintiff's evidence is circumstantial, a disparate treatment claim proceeds through a three-step framework. First, Plaintiff must present a *prima facie* case. Where the employer eliminates an employee's position pursuant to a reduction in force or a reorganization, or fails to transfer an employee when other employees benefitted from transfers, Plaintiff may establish a *prima facie* case of discrimination by showing (1) that he was a member of a protected class; (2) that he was qualified for the transferee position; (3) that he was discharged; and (4) that other, similarly situated employees not in the same protected class were treated better or were transferred. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). In a failure to promote situation, Plaintiff bears the initial burden of making a *prima facie* case that 1) he is a member of a protected class; 2) that he was qualified for the job, 3) that he applied for and did not receive the position or was not offered the position, and 4) that a similarly situated employee who was not in plaintiff's protected class received the job. *See also Roh v. Lakeshore Estates, Inc.*, 241 F.3d 491, 497 (6th Cir. 2001). The *prima facie* test is meant to be a relatively light burden. *Tex.*

*Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (stating that in a Title VII case "the burden of establishing a *prima facie* case of disparate treatment is not onerous").

If a plaintiff carries that burden, then, in the second step of the framework, Nortel must produce a legitimate, nondiscriminatory reason for the adverse employment action. *Reeves*, 530 U.S. at 142. The defendant's burden is one of production, not persuasion; it involves no credibility assessment. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

If Nortel carries its burden, then, in the final stage in the process, Plaintiff must prove by a preponderance of the evidence that Nortel's proffered reason is a mere pretext for intentional discrimination. *Reeves*, 530 U.S. at 146. To survive summary judgment, Plaintiff must produce evidence both that Nortel's rationale is incredible and that the true motivation behind the failure to transfer or nonpromotion included intentional discrimination because of his race or age. *St. Mary's Honor Ctr.*, 509 U.S. at 515 ("[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason."). From an evidentiary standpoint, in some (but not all) cases, sufficient evidence of discriminatory intent may come solely from the *prima facie* case. *Reeves*, 530 U.S. at 147-48. The factfinder may consider the evidence and inferences from Plaintiff's *prima facie* case, along with other evidence. *Id.* at 143.

Methods of disproving Nortel's reasons include demonstrating that the reasons 1) have no basis in fact, 2) are not the actual reasons, or 3) are insufficient to explain Nortel's actions. *Logan*, 259 F.3d at 567. This Circuit has adopted the "honest belief" rule, and Plaintiff cannot demonstrate pretext merely by showing that Nortel t's hiring rationale was "mistaken, foolish, trivial, or baseless," *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998), so long as Nortel honestly

believed in the rationale and based this belief on particularized facts before it at the time, *id.* at 806-07.

**E.      Application**

Plaintiff argues that Nortel discriminated against him on the basis of race and/or age in 1) failing to allow Plaintiff the opportunity to compete for the Tax Analyst and Senior Tax Analyst positions in Raleigh, 2) failing to allow Plaintiff to compete for the position filled by Debbie Lee in Raleigh, and 3) failing to allow Plaintiff to compete for the promotion to State Income Tax Compliance Manager.  We need not address whether Plaintiff presents a *prima facie* case of discrimination; Plaintiff cannot survive summary judgment because he fails to present sufficient evidence such that a reasonable jury could conclude that Nortel's rationales are mere pretext for discrimination.

*1.      Nortel's Nondiscriminatory Rationales*

Nortel provides several, complementary rationales for its elimination of Plaintiff's original position, the subsequent hire of non-Sales and Use Tax personnel in Raleigh, the retention of Debbie Lee, and the promotion of Michele Haney into the State Income Tax Compliance Manager position in Raleigh.  The district court held that Nortel's explanations were non-discriminatory reasons and as such carried Nortel's burden of production in the second step of the *McDonnell-Douglas* burden shifting framework.  We agree with the district court.

First, Nortel notes that the closure of the Nashville officer, and the subsequent decision to outsource the Sales and Use Tax work in Raleigh, were part of a massive, company-wide restructuring which resulted in a workforce reduction from around 95,000 employees to 36,000 employees between 2001 and 2003.  This workforce restructuring involved a consolidation of Nortel's Tax Department and the closure of the Nashville office in which Plaintiff worked.  Before

11

the closure, the majority of Nortel's Sales and Use Tax group, one of three tax groups in the Tax Department, was located in Nashville. After the decision was made to close the Nashville officer and consolidate the Tax Department in Raleigh, Nortel decided to further cut costs by outsourcing the Sales and Use Tax work to an outside accounting firm. Nortel notes that Plaintiff does not dispute the business decision to close the Nashville officer or outsource the Sales and Use Tax work.

Nortel asserts that its original offer to Plaintiff to relocate to Raleigh was made prior to its decision to outsource the Sales and Use Tax work. Nortel argues that its offer to Plaintiff was an offer to continue in his current position, *i.e.*, Senior Tax Analyst in the Sales and Use Tax group. After the decision to outsource, this position no longer existed. Nortel notes that it reimbursed Plaintiff for expenses incurred in preparing to make the move to Raleigh. Nortel further notes that nobody was transferred from Nashville to Raleigh to perform Sales and Use Tax work, and that the only person ultimately transferred from Plaintiff's department, Michele Haney, was not transferred for Sales and Use Tax work, but to serve as the State Income Tax Compliance Manager, a position within the State and Franchise Tax group.

Nortel argues that Haney had been active in seeking out promotion opportunities and had expressed an interest in such opportunities well before the decision to outsource the Sales and Use Tax function. Nortel notes that Haney consistently made contact with Nortel management to inquire about available promotion opportunities. When Haney informed Nortel that she would only transfer to Raleigh if a promotion were involved, Nortel management looked for such an opportunity and identified the State Income Tax Compliance Manager position as consistent with Haney's background experience in state and local income tax matters and Haney's certification as a CPA.

12

Nortel argues that Haney was identified for the position before the decision was made to outsource the Sales and Use Tax work.

Nortel explains its decision to retain Debbie Lee to coordinate the information-gathering aspect of the Sales and Use Tax work – the front end work which remained after outsourcing the substantive work to an external accounting firm – as a decision of necessity and convenience. Nortel needed this coordination role, and Lee had already been performing some front-end information gathering functions and was conveniently already located in Raleigh.

Nortel further argues that Plaintiff lacks experience in federal or state and local income tax work, having worked only in sales, use, and excise tax areas either before or during his time at Nortel. Nortel notes that every hiree in Raleigh was hired in the income tax groups and that every hiree had previous experience specifically working in income tax areas and in public accounting, neither one of which Plaintiff had. Every hiree except Brantley-Day had either a Master's degree or was a CPA. Regarding Brantley-Day, Nortel notes that Brantley-Day possessed specific experience both in income tax and in public accounting, and was hired for precisely the same function – performing state and local income tax audits – which Brantley-Day had performed in her prior accounting positions.

2.      *Plaintiff's Evidence of Pretext*

Plaintiff's argues that Nortel's explanations for its hiring decisions are mere pretext to conceal discriminatory intent. Plaintiff's primary argument rests upon Nortel's alleged failure to follow its normal procedures in posting new positions on the intranet for general access by current Nortel employees. Specifically, Plaintiff argues that Nortel failed to follow internal posting procedures for the position entered into by Debbie Lee, for the State Income Tax Compliance

13

Manager position taken by Michele Haney, and for the Raleigh tax analyst positions. Plaintiff further argues that he was deprived of the opportunity to compete for these positions because when he inquired about alternative positions available in Raleigh after learning of the intention to outsource Sales and Use Tax work in March 2002, he was told by Nashville management that no Senior Tax Analyst or Tax Analyst positions were available in Raleigh.

Plaintiff also argues that the racial and age profile of those persons hired in Raleigh, Debbie Lee, and Michel Haney – all young, white employees – is evidence of discriminatory intent. Plaintiff argues that this racial and age profile creates a permissible inference that Nortel intentionally discriminated against Plaintiff on the basis of race and/or age by intentionally restricting Plaintiff's ability to compete for the disputed positions. To buttress this contention, Plaintiff argues that during his time at Nortel his management was based on a "white culture" in which Plaintiff was "treated differently" than his white counterparts, receiving subpar assignments, unfair evaluations, and lack of recognition for Plaintiff's work.

*3.      Analysis*

We find that Plaintiff has failed to present sufficient evidence such that a reasonable juror may conclude that Nortel intentionally discriminated against Plaintiff on the basis of race or age. Methods of disproving Nortel's reasons include demonstrating that the reasons 1) have no basis in fact, 2) are not the actual reasons, or 3) are insufficient to explain Defendant's actions. *Logan*, 259 F.3d at 567. Here, Plaintiff appears to be arguing that Nortel's proffered explanations are not its real reasons or are insufficient to explain Nortel's actions.

Significantly, Plaintiff has no evidence that racial or age animus motivated any of Nortel's employment actions. The Supreme Court has held that a plaintiff needs to do more than merely cast

14

doubt on the employer's rationale; a plaintiff must create a permissible inference that race or age was the actual motivation for the employer's decisions. *St. Mary's Honor Ctr.*, 509 U.S. at 515 ("[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason.") Plaintiff's conclusory allegations about the "white culture" at Nortel cannot be imputed to Nortel's decision-makers in the disputed hiring decisions absent some specific evidence of racial animus on the part of the actual decision-makers. *See Heady v. United States Enrichment Corp.*, No. 04-5762, 10 Wage & Hour Cas. 2d (BNA) 1472, 2005 U.S. App. LEXIS 17555, at *12 (6th Cir. Aug. 16, 2005) (requiring link between discriminatory treatment and disputed employment action). Plaintiff's personal belief that he was treated unfairly as premised on his own assessment of his skills and abilities is not evidence of discrimination. *See Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir. 1986). Nor is Plaintiff's own beliefs in his qualifications sufficient to call into question Nortel's business judgment about Plaintiff's relative abilities and experience. *See Williams v. Columbus Metro. Housing Auth.*, No. 02-3930, 90 Fed. App'x 870, 873-74 (6th Cir. Feb. 2, 2004). Finally, while statistical evidence of disparate treatment or impact in employment decisions can support an inference of discrimination, Plaintiff has failed to proffer proper statistics to the courts. Plaintiff presents a profile of hirees in Raleigh without presenting a comparable profile of applicants, or some other proper reference. This Court has held that the racial, age, or gender make-up of a department must be cast against a proper background (e.g., qualified applicants, industry or geographic norms) to constitute valid evidence of discrimination. *See Smith v. Leggett Wire Co.,* 220 F.3d 752, 761-62 (6th Cir. 2000); *see also Hartsell v. Keys*, 87 F.3d 795, 801-02 (6th Cir. 1996).

Plaintiff's strongest evidence is Nortel's apparent failure to follow its internal posting procedures. This Court has held that failure to follow internal procedures can be evidence of pretext, but that this evidence is strongest when shown that a company applied the same standard differently to people in different race, age, or gender groups. *See Durante v. Ohio Civil Rights Comm'n*, 902 F.2d 1568 (6th Cir. 1990) (*per curiam*). This Court has also held, however, that not all failures to follow company procedure are necessarily evidence of discrimination. *See McCormack v. Frank*, No. 93-5416, 1994 U.S. App. LEXIS 21619, at *13 (6th Cir. Aug.10, 1994) ("[Plaintiff's] claim that the defendant failed to follow published hiring procedures has no bearing on the non-pretextual nature of [defendant's] articulated reason for not selecting the plaintiff.") Moreover, failure to follow internal procedures, standing alone, is insufficient to create a permissible inference of discriminatory intent. *See Huston v. Tenn. State Bd. of Regents*, No. 94-6579, 1996 U.S. App. LEXIS 14399, at *6 (6th Cir. April 22, 1996).

In the instant case, Plaintiff alleges that Nortel failed to follow its internal posting procedures for the income tax accounting positions open in Raleigh, for Debbie Lee's position, and for the State Income Tax Compliance Manager role. Even if true, there is nothing inherently discriminatory in Nortel's failure in this respect. The postings would have been unavailable to all Nortel personnel, not just those personnel in a certain age, race, or gender group. Moreover, the internal posting procedure does not exist to serve egalitarian goals, such as a standard disciplinary process may serve. *Compare Durante*, 902 F.3d at 1568 (finding failure to follow disciplinary procedures proper evidence of discrimination), *with McCormack,* 1994 U.S. App. LEXIS 21619, at *13 (finding failure to follow normal hiring procedures not evidence of discrimination). We therefore hold that the district court properly granted summary judgment to Nortel.

**III.**

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment for Nortel.

17