*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0133p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SHARON MACY,

*Plaintiff-Appellant,*

*v.*

No. 06-5722

HOPKINS COUNTY SCHOOL BOARD OF EDUCATION,
*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 01-00195—E. Robert Goebel, Magistrate Judge.

Argued: March 8, 2007

Decided and Filed: April 12, 2007

Before: MOORE and GIBBONS, Circuit Judges; SARGUS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Robert S. Silverthorn, Jr., Louisville, Kentucky, for Appellant. J. Keith Cartwright, FRYMIRE, EVANS, PEYTON, TEAGUE & CARTWRIGHT, Madisonville, Kentucky, for Appellee. **ON BRIEF:** Robert S. Silverthorn, Jr., Louisville, Kentucky, for Appellant. J. Keith Cartwright, FRYMIRE, EVANS, PEYTON, TEAGUE & CARTWRIGHT, Madisonville, Kentucky, for Appellee.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Sharon Macy ("Macy") appeals the district court's order granting summary judgment to Defendant-Appellee Hopkins County School Board of Education ("the Board"). Macy alleged that the Board violated federal and state law by firing her because she was disabled and in retaliation for protected activities. The Board asserted that Macy was fired for threatening students and making inappropriate remarks about the students and their families, and that this was the latest in a series of incidents of misconduct. The district court granted the Board's motion for summary judgment, concluding that Macy had not introduced direct or circumstantial evidence sufficient for a jury to find that she was fired because of her disability or in retaliation for protected activities. Because Macy has not presented evidence

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

from which a reasonable jury could conclude that the Board's proffered reason for firing her was pretextual, and because Macy has forfeited her retaliation claims and state-law claims, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Sharon Macy was employed as a physical-education teacher by the Hopkins County School Board of Education from August of 1981 until November 30, 2000.  On June 6, 1987, Macy suffered a head injury in a bicycle accident.  She returned to work, but aggravated her injuries in another accident in 1996.  Soon after, the Board and Macy agreed to implement certain accommodations as a result of Macy's head injuries.

Macy and the Board developed a "Section 504 Individualized Accommodation Plan" ("504 Plan"), which listed Macy's disabling condition as "post concussive syndrome" and described such symptoms as "[r]ecurrent headaches, difficulty with attention and concentration, short term memory deficits, disrupted sleep, depression and/or anxiety, irritability with others and outbursts of anger." Joint Appendix ("J.A.") at 204, 208.  The 504 Plan described the impact of Macy's condition and listed accommodations that the Board and Macy were to implement.  For example, the 504 Plan noted that Macy "may need to leave her classroom suddenly due to acceleration of symptoms identified in medical diagnosis" and that her classroom "needs to be as organized and as free from disruptions as possible so that the opportunities for loud disruptions or outbursts are minimal thus decreasing Ms. Macy's chances of becoming frustrated, anxious, or inattentive."  J.A. at 205, 209. Additionally, Macy requested that she be allowed to have a colleague present during meetings with parents or administrators "for assurance and retention purposes."  J.A. at 206, 210.

Macy complained approximately ten times that Daryl Herring ("Herring"), the principal of the middle school at which Macy worked, did not properly implement the 504 Plan.  Each time, Macy contacted assistant superintendent Linda Zellich ("Zellich"), the Board's "point person" for overseeing the 504 Plan.  Macy testified that in response to her complaints, Zellich would call Herring or set up a meeting to discuss her complaint.  Macy also testified that only once did Zellich not satisfy her complaints—when Macy requested a teacher's aide in August 2000.

On February 21, 2000, Macy filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Kentucky Commission on Human Rights.  Macy alleged that Herring sent her a letter requesting that she report to work on time and that she complained to Zellich that Herring did not send similar letters to non-disabled employees who arrive late or sign in late.  Macy alleged that Herring later sent her a letter of reprimand purportedly regarding another incident, but stated that she believed Herring's second letter was actually in retaliation for her complaints about the first letter.

On November 1, 2000, Macy was involved in an incident at South Hopkins Middle School, where she worked.  As Macy left to go home that afternoon, she saw a group of boys playing basketball outside unsupervised.  Macy claims that she brought the boys inside and lectured them about playing outside unsupervised, warning that they could have been seriously injured or killed. The boys claimed that Macy threatened to kill them and reiterated that "she meant it."  J.A. at 145 (*Macy v. Stevens*, No. 2001-CA-002756-MR, at 8 (Ky. Ct. App. Dec. 13, 2002)).  The boys also claimed that Macy made inappropriate remarks about the marital status of their family members and about their sexual activity, including "derogatory comments about men to the effect that they raped women, that they got them pregnant and then left them."  J.A. at 140, 145 (*Macy*, No. 2001-CA-002756-MR, at 3, 8).

Following the incident, Superintendent James Lee Stevens ("Stevens") ordered an investigation into both the incident and any past problems involving Macy.  On November 30, 2000,

following the investigation, Stevens sent Macy a letter notifying her that, pursuant to KY. REV. STAT. § 161.790(1)(b), her employment contract was terminated effective immediately on the grounds of conduct unbecoming a teacher, citing the November 1 incident as well as thirty-one specific prior incidents.

Macy requested that an administrative tribunal review Stevens's decision, pursuant to KY. REV. STAT. § 161.790(3) and (4). *See also* KY. REV. STAT. § 13B.090. After a hearing, the tribunal determined that Macy's principal had failed to notify her properly of charges that she arrived late for work and that at least four infractions described in the termination letter were not supported by the evidence. However, the tribunal also concluded that Macy had indeed committed many of the other alleged infractions. Specifically, the tribunal determined that Macy had left the school building without signing out, pushed a chair off a stage, referred to a student as a "total loser," violated the policy on grades, kicked a trash can in response to student misbehavior, made derogatory comments about a parent and two other employees in front of a classroom of students including the child of the parent, sent a fake detention to the assistant principal, checked out early without ensuring that a fellow employee would cover her bus duty, improperly disciplined students, slammed a book against the floor and made derogatory comments about other employees during a meeting, and made statements that she would not follow discipline policies. J.A. at 119-20 (Tribunal Order at 2-3). Most importantly, the tribunal determined that Macy had actually threatened a group of boys on November 1, 2000, and "also made inappropriate statements about the marital status of children's families and made inappropriate remarks regarding the students' sexual activity." J.A. at 121 (Tribunal Order at 4).

On the basis of the evidence presented, the tribunal "f[ou]nd[] Macy guilty of conduct unbecoming a teacher, and the tribunal impose[d] the punishment of termination of her teaching contract." J.A. at 118 (Tribunal Order at 1). Macy appealed the tribunal's decision to the Hopkins County Circuit Court, *see* KY. REV. STAT. §§ 13B.140 & .150, which affirmed the decision on December 7, 2001. Macy further appealed to the Kentucky Court of Appeals, which affirmed on December 13, 2002. Macy filed a motion for discretionary review with the Kentucky Supreme Court, which denied the motion on August 17, 2005. On December 14, 2004, during the course of Macy's appeals, the Kentucky Education Professional Standards Board revoked Macy's teaching certificate for a period of ten years.

Meanwhile, Macy faced criminal charges stemming from the November 1, 2000 incident. The parties agree that on November 29, 2000, Macy was charged with nine counts of terroristic threatening in the third degree in violation of KY. REV. STAT. § 508.080.[1] Macy was convicted by a Hopkins County District Court jury. Her conviction was affirmed by the Hopkins County Circuit Court, and both the Kentucky Court of Appeals and the Kentucky Supreme Court denied discretionary review. The United States Supreme Court denied Macy's petition for certiorari. *Macy v. Kentucky*, 542 U.S. 938 (2004).

Also during this time period, Macy's complaint with the EEOC and the Kentucky Commission on Human Rights was resolved. The Kentucky Commission on Human Rights dismissed Macy's complaint on June 21, 2001, "upon a finding of no probable cause to believe that the Respondent has engaged in an unlawful practice in violation of the Kentucky Civil Rights Act." J.A. at 130-31 (Ky. Comm'n on Human Rights Order). On August 16, 2001, the EEOC also dismissed Macy's complaint, indicating that it had "adopted the findings of the state or local fair employment practices agency that investigated this charge." J.A. at 132 (EEOC Dismissal & Notice of Rights).

---

[1] The statute states, in relevant part: "(1) . . . [A] person is guilty of terroristic threatening in the third degree when: (a) He threatens to commit any crime likely to result in death or serious physical injury to another person or likely to result in substantial property damage to another person . . . ." KY. REV. STAT. § 508.080.

On November 15, 2001, Macy filed a pro se complaint in the federal district court against the Hopkins County Board of Education. Through counsel, Macy filed an amended complaint on April 22, 2005, alleging five counts: (1) violation of the Americans with Disabilities Act ("ADA"); (2) retaliation for Macy's complaints regarding implementation of her 504 Plan; (3) retaliation for Macy's complaint filed with the EEOC; (4) discriminatory discharge in violation of the Kentucky Civil Rights Act, KY. REV. STAT. § 344.040; and (5) retaliation in violation of the Kentucky Civil Rights Act, KY. REV. STAT. § 344.280. The Board filed a motion for summary judgment on January 13, 2006. Macy filed a response on February 13, 2006, and the Board filed a reply on February 27, 2006. On May 1, 2006, the district court granted summary judgment for the Board on all claims. Macy timely appealed. After the parties submitted their briefs and the case was set for argument, we sought and received letter briefs regarding whether and to what extent Macy's claims were barred by the doctrine of issue preclusion.

## II.  ANALYSIS

We review de novo a district court's order granting summary judgment. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(c). "The moving party bears the burden of demonstrating that there are no genuine issues of material fact, which 'may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The nonmoving party must then put forth "significantly probative" evidence supporting its claims in order to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Of course, we must be mindful that summary judgment is inappropriate whenever the evidence raises a genuine issue of material fact, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

### A.  ADA Discrimination Claim

The ADA bars employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "To recover on a claim of discrimination under the [ADA], a plaintiff must show that: 1) he is an individual with a disability; 2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable

accommodation; and 3) he was discharged solely by reason of his handicap."[2] *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996).

　　Macy attempts to meet this burden by presenting circumstantial evidence of discrimination,[3] requiring us to apply the familiar *McDonnell Douglas* burden-shifting framework. "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000). Thus, the plaintiff must first submit evidence from which a reasonable jury could conclude that a prima facie case of discrimination has been established. *Monette*, 90 F.3d at 1186. The defendant must then offer sufficient evidence of a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination. *Id.* Although the burdens of production shift, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### 1. Prima Facie Case

　　"The burden of establishing a prima facie case of disparate treatment is not onerous." *Id.* Generally, at the summary judgment stage, a plaintiff's burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action

---

　　　**2** It appears that every other circuit save one that has addressed the issue has held that an employee may recover under the ADA if the employee's disability was a "motivating factor" in the employer's decision, and that the employee need not establish that he or she was fired "solely" because of his or her disability. *See Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1063-65 (9th Cir. 2005); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 336-37 (2d Cir. 2000); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468-70 (4th Cir. 1999); *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1033-34 (7th Cir. 1999); *Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 279 (5th Cir. 1998); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1073-77 (11th Cir. 1996), *cert. denied*, 520 U.S. 1228 (1997); *Katz v. City Metal Co.*, 87 F.3d 26, 33 (1st Cir. 1996); *Pedigo v. P.A.M. Transp., Inc.*, 60 F.3d 1300, 1301-02 (8th Cir. 1995). *But see Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("Under either the ADA or the Rehabilitation Act, [the plaintiff] is obligated to show that he was 'otherwise qualified' for the benefits he sought and that he was denied those 'solely by reason of disability.'"). However, we have reaffirmed that *Monette* requires that a plaintiff demonstrate that "disability was the sole reason for the adverse employment action." *Hedrick v. W. Reserve Case Sys.*, 355 F.3d 444, 454 (6th Cir.), *cert. denied*, 543 U.S. 817 (2004). It appears that we adopted this requirement from the standards which apply to the Rehabilitation Act, which by its terms bars discrimination against a person with a disability "solely by reason of her or his disability." 29 U.S.C. § 794(a). The ADA, on the other hand, bars discrimination "because of the disability," with no mention of the word "solely." 42 U.S.C. § 12112(a). We are, of course, currently bound by *Monette* and *Hedrick*, *see Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985); 6th Cir. R. 206(c) ("Reported panel opinions are binding on subsequent panels."), whether the reasoning set forth in those opinions was correct or not.

　　　**3** Macy argued below that she had presented direct evidence of discrimination, but mentions this argument in her brief on appeal in only one sentence, and only in passing. *See* Appellant's Br. at 19 ("The District Court, however, found that Macy's direct evidence required it '. . . to draw an inference in order to prove the existence of a fact'; and thus no direct evidence existed that her termination was 'solely' due to her ADA post concussive syndrome."). Accordingly, this argument is forfeited, and we do not address it here. *See United States v. Reed*, 167 F.3d 984, 993 (6th Cir.), *cert. denied*, 528 U.S. 897 (1999). Macy's counsel attempted to raise this issue again at oral argument, but oral argument generally cannot resurrect issues forfeited in briefs. *See Hamilton v. Morgan*, 474 F.3d 854, 861 n.5 (6th Cir. 2007); *cf. United States v. Harper*, 246 F.3d 520, 522, 529 (6th Cir. 2001) (considering the merits of an issue raised for the first time at oral argument because intervening changes in case law affected the issue and counsel notified the court beforehand of counsel's intention to raise the issue at oral argument), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377, 384 n.7 (6th Cir. 2002). To the extent that Macy merely restates her argument that firing her because of her behavior was improper because her behavior was due to her disability, this argument is addressed *infra*, Section II.A.2.

"under circumstances which give rise to an inference of unlawful discrimination."[4] *Id.* Thus, a plaintiff normally must show that he or she:  1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment action; and 4) suffered such action under circumstances which give rise to an inference of unlawful discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Monette*, 90 F.3d at 1177-86.  The Supreme Court and this court have set forth a number of more specific ways by which a plaintiff may satisfy these elements, particularly the fourth element.  *See, e.g.*, *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) (concluding that a plaintiff alleging age discrimination may satisfy the fourth element by introducing evidence that the plaintiff was replaced by someone "substantially younger"); *McDonnell Douglas*, 411 U.S. at 802 (concluding that a plaintiff turned down for a job may show "that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications"); *Wright*, 455 F.3d at 707 (concluding that a fired plaintiff may show that "'he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees'" (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004))); *Monette*, 90 F.3d at 1185 (concluding that a plaintiff alleging discrimination on the basis of disability may show that "after rejection or termination the position remained open, or the disabled individual was replaced").  We must keep in mind, however, that these are merely various context-dependent ways by which plaintiffs *may* establish a prima facie case, and not rigid requirements that all plaintiffs with similar claims must meet regardless of context.  *See McDonnell Douglas*, 411 U.S. at 802 n.13 ("The facts necessarily will vary in [employment discrimination] cases, and the specification above of the prima facie proof required from [a plaintiff] is not necessarily applicable in every respect to differing factual situations.").  The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination. *Burdine*, 450 U.S. at 253.

Under the facts of this case, the prima facie case formulation set forth in *Monette* applies quite well.  In order to establish a prima facie case of discrimination in violation of the ADA in this context, a plaintiff must show that:  "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Monette*, 90 F.3d at 1186.  In its summary judgment motion below, the Board did not argue that Macy had not introduced sufficient evidence of a prima facie case.  On appeal, the Board asserts that it did not concede that Macy had established a prima facie case, but does not address the elements of a prima facie case and argues only that the Board had a legitimate reason for firing Macy.  We are mindful that "when assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Cline*, 206 F.3d at 660-61.  Accordingly, we treat Macy's prima facie case as conceded for purposes of this appeal.

---

[4] In *Burdine*, the Supreme Court stated that a plaintiff must "prove by a preponderance of the evidence" the elements of a prima facie case in order to meet his or her burden. *Burdine*, 450 U.S. at 253.  However, the Court was reviewing a bench trial, not a motion for summary judgment, and we have since made clear that a district court's duty in reviewing a motion for summary judgment is to "determine[] if a plaintiff has put forth sufficient evidence for a reasonable jury to find her to have met the prima facie requirements." *Cline*, 206 F.3d at 661; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509-10 (1993) (stating that a question of fact remains for the jury if "reasonable minds could differ as to whether a preponderance of the evidence establishes the facts of a prima facie case") (emphasis removed).

## 2. Legitimate, Nondiscriminatory Reason

The Board introduced evidence that Macy was fired because she threatened to kill a group of boys, made inappropriate remarks about the marital status of the boys' family members, and made inappropriate remarks about the boys' sexual activity, and that this incident was consistent with a number of prior incidents of inappropriate conduct. Macy argues that this is not a legitimate, nondiscriminatory reason because her "verbal outbursts, anxiety, anger and . . . irritability" are symptomatic behaviors of her disability and, therefore, the Board's proffered reason actually concedes that she was fired because of her disability. Appellant's Br. at 18. However, this court has repeatedly stated that an employer may legitimately fire an employee for conduct, even conduct that occurs as a result of a disability, if that conduct disqualifies the employee from his or her job. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 813 (6th Cir. 1999), *cert. denied*, 530 U.S. 1262 (2000); *Brohm v. JH Props., Inc.*, 149 F.3d 517, 521-22 (6th Cir. 1998); *Mararri v. WCI Steel, Inc.*, 130 F.3d 1180, 1182-83 (6th Cir. 1997); *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 845-48 (6th Cir. 1995). Accordingly, the Board has offered a legitimate, nondiscriminatory reason for firing Macy.

## 3. Pretext

A plaintiff may demonstrate that an employer's proffered legitimate reason for an adverse employment action is pretextual on any of three grounds: 1) by showing that the reason has no basis in fact; 2) by showing that the reason did not actually motivate the employer's action; or 3) by showing that the reason was insufficient to motivate the action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Macy attempts to attack the Board's proffered reason on all three grounds, but her evidence is insufficient to survive the Board's motion for summary judgment on each ground.

### a. No Basis In Fact

Macy first argues that the Board's proffered reason is pretextual because it has no basis in fact. That is, Macy attempts to introduce "evidence that the proffered bases for [her] discharge never happened, *i.e.*, that they are 'factually false.'" *Id.* (quoting *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir. 1994)). In her deposition, Macy testified that she did not threaten to kill the group of boys on November 1, 2000, and did not make inappropriate remarks about the boys or their families. Macy also testified that she admitted seven of the thirty-one additional incidents listed in her termination letter, although she denied some of the particular facts asserted about those seven incidents.

Normally, Macy's deposition testimony that a number of the incidents relied on by the Board in firing her did not occur as described by the Board, including the November 1, 2000 incident upon which the Board primarily relied, could be sufficient to create a genuine issue of material fact regarding whether these parts of the Board's proffered reason were pretextual. *Cf. Abbott v. Crown Motor Co.*, 348 F.3d 537, 544 (6th Cir. 2003) (concluding that summary judgment was improper because "both plaintiff's testimony and that of another witness dispute [the] proffered reason"). However, in this case, Macy is precluded from arguing that the underlying incidents did not occur by the doctrine of issue preclusion.[5]

---

[5] Neither party raised issue preclusion in this appeal, and "[c]ourts generally lack the ability to raise an affirmative defense sua sponte." *Hutcherson v. Lauderdale County, Tenn.*, 326 F.3d 747, 757 (6th Cir. 2003). However, "where a purely legal issue provides alternative grounds to uphold the judgment of the district court, we may reach the issue, provided the record permits its resolution as a matter of law. Furthermore, we have not failed to exercise our discretion to reach an issue that the parties have not briefed where it involves a 'pure question of law that cries out for resolution.'" *Id.* at 756 (citations omitted) (quoting *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 984 (6th Cir. 2000)) (raising

Under Kentucky law, issue preclusion applies only if four elements are met:

First, the issue in the second case must be the same as the issue in the first case. Second, the issue must have been actually litigated. Third, even if an issue was actually litigated in a prior action, issue preclusion will not bar subsequent litigation unless the issue was actually decided in that action. Fourth, for issue preclusion to operate as a bar, the decision on the issue in the prior action must have been necessary to the court's judgment.

*Yeoman v. Commonwealth*, 983 S.W.2d 459, 465 (Ky. 1998). Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state. 28 U.S.C. § 1738. Moreover, although § 1738 does not apply to decisions of state administrative tribunals, "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)).

Two state decisions preclude Macy from arguing that the Board's proffered reason had no basis in fact. First, Macy admits that she was convicted by a Hopkins County District Court jury of nine counts of terroristic threatening in violation of KY. REV. STAT. § 508.080, and that this judgment was upheld on appeal through the Kentucky court system. Thus, whether or not Macy actually threatened to kill the boys is an issue that was litigated, decided, and was necessary for the judgment in Macy's Kentucky criminal case. Accordingly, she is precluded from arguing in federal court that she did not actually threaten to kill the boys.

Second, an administrative tribunal also determined that Macy had actually threatened to kill the boys. Moreover, the tribunal determined that Macy had made inappropriate comments to the boys and had committed a number of the other instances of conduct unbecoming a teacher described in Macy's termination letter.[6] The tribunal concluded that "[t]he seriousness of the misconduct of threatening to kill students in itself warrants termination, and the other instances of conduct unbecoming a teacher show a pattern of misconduct and serve to reinforce that sanction." J.A. at 123 (Tribunal Order at 6). This determination was also upheld on appeal through the Kentucky court system. Thus, whether or not Macy actually committed those particular infractions and whether they constituted legal cause for termination under Kentucky law are issues that were litigated, decided, and were necessary for the judgment in Macy's administrative case. Accordingly, she is precluded from arguing in federal court that she did not actually commit those infractions and

---

the issue of res judicata sua sponte). Moreover, the Supreme Court has indicated that courts may raise preclusion sua sponte in "special circumstances," in no small part because preclusion doctrine "is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Arizona v. California*, 530 U.S. 392, 412 (2000).

We believe that this case presents such special circumstances. The Board complied with Federal Rule of Civil Procedure 8(c) by raising issue preclusion in its answer to Macy's amended complaint, and raised it again in its motion for summary judgment in the district court. Moreover, we asked for and received letter briefs from the parties on issue preclusion as well. Thus, Macy was put on notice of the defense and had an opportunity to respond, both in the district court and on appeal. Macy has already litigated the underlying issue twice, and has not presented any new evidence or any other reason suggesting why litigating it a third time would be appropriate. Resolution of the preclusive effect of the state-court judgments at issue presents a pure question of law and does not require us to resolve any factual disputes. Accordingly, we address issue preclusion here.

[6] It is worth noting that Macy admitted a number of these infractions in her deposition testimony. *See* J.A. at 87-89 (Macy Dep. at 37-47).

that the Board's proffered reason has no basis in fact.[7]  *Cf. Wicker v. Bd. of Ed.*, 826 F.2d 442, 447-49 (6th Cir. 1987) (concluding that Kentucky state-court decisions precluded a fired superintendent from relitigating whether he actually mishandled the school system's financial affairs and whether that was legal grounds for termination).

### b.  Did Not Actually Motivate

Next, Macy argues that parts of the Board's proffered reason—specifically, all of the alleged incidents prior to the November 1, 2000 incident—are pretextual because they did not actually motivate the Board's decision to fire her.  For the purposes of this argument, "the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal." *Manzer*, 29 F.3d at 1084.  Nevertheless, the plaintiff argues that the proffered reason is pretextual by "attempt[ing] to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id.*  That is, "the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.*

Macy argues that "the Board's use of other alleged factors, accumulated over an extended period of time, to justify her termination is less than credible."  Appellant's Br. at 17.  Macy notes that she "had never been placed on any corrective action plan for any alleged violations during the entire period of her employment with the Board." *Id.* at 20-21; *see also* J.A. at 218 (Woodward Dep. at 243) (stating that "problems with a teacher or that teacher's abilities" would be reflected in a corrective action plan).  Although "failure to follow internal procedures can be *evidence* of pretext," *Felder v. Nortel Networks Corp.*, 187 F. App'x 586, 595 (6th Cir. 2006) (unpublished opinion) (emphasis added); *see also Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 267 (1977) (noting, in the context of reviewing a zoning decision, that "[d]epartures from the normal procedural sequence also might afford evidence that improper purposes are playing a role"), such a failure is, by itself, "generally insufficient to support a finding of pretext," *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6th Cir. 2005).  In this case, Stevens testified that the information about the prior incidents was collected because he ordered an investigation in response to the November 1, 2000 incident, in order to help him make a decision on how to respond to the incident.  The only evidence in the record on this issue shows that Macy was not fired on the basis of a collection of incidents newly brought to her attention—a situation which might very well create a triable issue of pretext—but was fired instead on the basis of a significant incident and a resulting investigation showing that that incident was not an isolated occurrence.  Because Macy has not presented any evidence to the contrary, she has not established a triable issue that the Board's proffered reasons did not actually motive the decision to fire her.

### c.  Insufficient to Motivate

Finally, Macy argues that the Board's proffered reason is pretextual because it was insufficient to motivate the decision to fire her.  This argument does not necessarily require that a plaintiff show that her employer did not have legal cause to fire her, but instead, "ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer*, 29 F.3d at 1084; *cf. Thomas v. Contoocook Valley*

---

[7] In its letter brief, the Board argues that Macy is also precluded from litigating the issue of whether the Board unlawfully discriminated against her because she has already litigated that issue in state court.  However, the state-court decisions make clear that the administrative tribunal did not decide that issue.  *See* J.A. at 142-43 (*Macy*, No. 2001-CA-002756-MR, at 5-6) (affirming the hearing officer's determination "that the ADA was not applicable law" in the administrative tribunal review of Macy's termination).

*Sch. Dist.*, 150 F.3d 31, 42 (1st Cir. 1998) (noting that the resolution of an employment discrimination case turns on the employer's actual motivation for firing an employee, as opposed to whether the employer had legal cause to fire the employee). We have explained that this standard requires a plaintiff to introduce evidence sufficient to enable a reasonable jury to conclude that the employees are "similar 'in all of the *relevant* aspects.'" *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (internal quotation marks omitted)). "[T]he relevant factors . . . often include the employees' supervisors, the standards that the employees had to meet, and the employees' conduct. But the weight to be given to each factor can vary depending upon the particular case." *Id.* (internal citations and parentheticals omitted). Moreover, because we are reviewing an order granting summary judgment, we must draw all reasonable inferences in favor of Macy. *See DiCarlo*, 358 F.3d at 414.

Macy argues that "[t]he Board's disparative [sic] treatment of Macy, compared to other Board employees, is stark," Appellant's Br. at 22, and at oral argument, Macy's counsel identified Patricia Bush ("Bush") as a nondisabled employee treated differently for substantially similar conduct. Bush was disciplined for telling a teacher's aide that she would "kill" a student if the aide did not remove the student from the room. J.A. at 167 (Stevens Dep. at 96). Bush made this statement in the presence of students, at least one of whom overheard her comment. Macy argued below that Stevens treated Bush differently by not reviewing Bush's history and by suspending Bush rather than firing her.

From the evidence that Macy presented, it appears possible that Macy and Bush are similar in many relevant respects. Specifically, both Bush and Macy were teachers in the same school district. Although Macy has not pointed to evidence that they worked in the same school, both were disciplined by Superintendent Stevens, who had ultimate supervisory and decision-making authority over both of them. Perhaps most importantly, both Bush and Macy stated that they would kill a student.

Because incidents of misconduct giving rise to discipline form the crux of the similarities between Bush and Macy, the degree of their misconduct is a factor to be given great weight in this case. *See Johnson*, 319 F.3d at 867. This does not require that Macy introduce evidence showing that Bush engaged in identical conduct, but merely that Bush engaged in conduct of "comparable seriousness." *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976) ("[P]recise equivalence in culpability between employees is not the ultimate question: as we indicated in *McDonnell Douglas*, an allegation that other 'employees involved in acts against (the employer) of Comparable seriousness . . . were nevertheless retained . . .' is adequate to plead an inferential case that the employer's reliance on his discharged employee's misconduct as grounds for terminating him was merely a pretext." (quoting *McDonnell Douglas*, 411 U.S. at 804) (alteration in original)); *Wright*, 455 F.3d at 710 ("In the disciplinary context, we have held that to be found similarly situated, the plaintiff and his proposed comparator must have engaged in acts of '*comparable seriousness*.'"). However, the only evidence that Macy has pointed to concerning the incident involving Bush is parts of two pages of Stevens's deposition testimony. Stevens testified that Bush made a "threatening comment" and used the word "kill" in talking to a teacher's aide in reference to a student and that at least one student overheard this, but Stevens did not provide any further details about the circumstances of that incident. Macy did not introduce testimony from Bush, the teacher's aide, or the student, or any other additional evidence about the incident. Macy also did not argue that she should be granted more time pursuant to Federal Rule of Civil Procedure 56(f) to secure such evidence.

Although it is possible that these two incidents were of comparable seriousness, absent additional evidence, a jury could reach such a conclusion only by filling in the details with speculation. For example, the lack of evidence suggests at least two possible important differences

between the two incidents. First, Macy directly threatened to kill a group of students, but Bush made her threatening statement about a student to a teacher's aide. That difference might be inconsequential in many cases, but Macy also has not pointed to evidence showing that the student that Bush allegedly threatened heard Bush's comment, or was even in the room when the comment was made.[8] We must draw all reasonable inferences in favor of Macy, but Macy has not pointed to any evidence from which a jury could infer that the student heard Bush's comment, and such a conclusion would thus be a guess, not an inference. Because making threatening comments about a student outside of the student's presence is conduct significantly less serious than directly threatening a group of students, the limited evidence presented is not sufficient for a reasonable jury to conclude that Macy was treated differently in a similar situation.[9] Thus, Macy has not presented evidence from which a reasonable jury could conclude that the Board's proffered reason was pretextual. Accordingly, we affirm the district court's decision granting summary judgment to the Board on Macy's ADA discrimination claim.

## B. Retaliation Claims

Macy alleged in her amended complaint that the Board retaliated against her for her complaints that her 504 Plan was not being implemented correctly and because she filed a complaint with the EEOC. Macy has not identified the law upon which her retaliation claims are based, and Macy has not attempted to develop her retaliation claims on appeal. Accordingly, those claims are forfeited. *See United States v. Reed*, 167 F.3d 984, 993 (6th Cir.), *cert. denied*, 528 U.S. 897 (1999).

Macy's retaliation claims also fail on the merits. This court has noted that the "essence" of a retaliation claim "is that the plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc). Macy has satisfied the first two elements, but has not introduced any evidence that her firing was in retaliation for protected conduct beyond the evidence that she introduced in support of her ADA discrimination claim, which does not suggest retaliation. Accordingly, no reasonable jury could conclude on the evidence in the record that Macy was fired in retaliation for protected conduct, and we affirm the district court's decision granting summary judgment to the Board on Macy's retaliation claims.

---

[8] The administrative tribunal also concluded that Macy had committed a number of other infractions, which in many cases would conclusively establish that Bush and Macy were not similar in all relevant aspects. However, the other incidents came to Stevens's attention because of the investigation that he ordered into Macy's work performance. Stevens did not order a similar investigation into Bush's work performance. Thus, if a reasonable jury could conclude that Bush and Macy engaged in conduct of comparable seriousness, the jury could also conclude that Stevens's decision to investigate and eventually fire Macy but not to investigate Bush shows that the proffered reason was pretextual.

[9] We do not mean to suggest that the only way that Macy could have survived the Board's motion for summary judgment on this issue was by showing that Bush's statement was overheard by the student and was thus functionally the same as a direct threat. Because "precise equivalence in culpability" is not required, *McDonald*, 427 U.S. at 283 n.11, Macy needed only to introduce evidence from which a reasonable jury could infer that Bush's conduct was of comparable seriousness. For example, Macy could have introduced evidence from which a reasonable jury could infer that Bush's comment was as or more harmful to those who heard it as Macy's comment was to the group of boys that she threatened, *see Clayton v. Meijer, Inc.*, 281 F.3d 605, 612 (6th Cir. 2002), or evidence that Bush was or could have been charged with as serious a crime as the terroristic-threatening-in-the-third-degree charge that Macy faced, *see Harrison v. Metro. Gov't of Nashville & Davidson County, Tenn.*, 80 F.3d 1107, 1115-16 (6th Cir.), *cert. denied*, 519 U.S. 863 (1996), *overruled on other grounds by Jackson v. Quanex Corp.*, 191 F.3d 647, 667 n.6 (6th Cir. 1999). However, Macy has not pointed to this type of evidence or any other evidence from which a reasonable jury could conclude that Bush's conduct was as serious as Macy's.

**C. State-Law Claims**

Macy has not cited Kentucky law or even mentioned her state-law claims on appeal. Accordingly, those claims are forfeited. *See Reed*, 167 F.3d at 993.

Macy's state-law claims fail on the merits as well. "We interpret Kentucky protections for the disabled consonant with the federal Americans with Disabilities Act." *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001). Thus, the same analysis that applies to Macy's federal claims applies to her state-law claims, and we affirm the district court's decision granting summary judgment to the Board on Macy's state-law claims.

### III.  CONCLUSION

Because Macy has not presented evidence from which a reasonable jury could conclude that the Board's proffered reason for firing her was pretextual, and because Macy has forfeited her retaliation claims and state-law claims, we **AFFIRM** the judgment of the district court.