**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0496n.06
Filed: July 13, 2007

No. 06-5042

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|                                  |    |                                       |
|----------------------------------|----|---------------------------------------|
| BARRY McPHERSON,                 | )  |                                       |
|                                  | )  |                                       |
| **Plaintiff-Appellant,**         | )  | **ON APPEAL** FROM THE                |
|                                  | )  | UNITED STATES DISTRICT                |
| v.                               | )  | COURT FOR THE WESTERN                 |
|                                  | )  | DISTRICT OF TENNESSEE                 |
| FEDERAL EXPRESS                  | )  |                                       |
| CORPORATION,                     | )  |                                       |
|                                  | )  | **O P I N I O N**                     |
| **Defendant-Appellee.**          | )  |                                       |
|                                  | )  |                                       |

**Before:  KEITH, BATCHELDER, and MOORE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  In this Americans with Disabilities Act ("ADA") case, 42 U.S.C. § 12101 *et seq.*, Plaintiff-Appellant Barry McPherson ("McPherson") appeals the district court's order granting summary judgment to Defendant-Appellee Federal Express Corporation ("Federal Express").  The district court found that McPherson failed to make a prima facie case of discrimination, because he did not demonstrate that he was "disabled" as that term is defined under 42 U.S.C. § 12102.  We agree with the district court and **AFFIRM** its order granting summary judgment to Federal Express.

**I.  BACKGROUND**

McPherson began working for Federal Express in 1984 as a material handler in the Memphis, Tennessee hub.  In 1993, he transferred to Federal Express's Washington, D.C. location.  While

working in Washington, D.C., McPherson was diagnosed with diabetes mellitus. In 1994, McPherson returned to the Memphis hub to work as a manager.

McPherson first met with Dr. James A. Moore ("Moore"), McPherson's family doctor, in February 2001. At McPherson's first visit, his diabetes was out of control—his A-1-C[1] was 11.4 when it should have been around 6.0. Moore stated that McPherson's diabetes had "been under control occasionally, but [was] mostly out of control." Joint Appendix ("J.A.") at 536 (Moore Dep. at 12).

Moore discussed how diabetes *could* restrict someone from working as follows:

There are all kinds of complications to diabetes that would [create work restrictions]. With a diabetic also, you . . . can go into a coma from high blood sugar or low blood sugar, either one, and that would naturally restrict you. . . . [S]ome people can feel pretty good if their blood sugar is high or if it gets low, you're taking too much insulin, you get fainty. But that doesn't happen in higher. When it gets real high, that's when it starts doing damage to the body, but you don't feel it until something drastic happens. Or if it gets real bad, you can go into what you call a diabetic acidosis, and then you get fairly sick.

J.A. at 545-46 (Moore Dep. at 21-22). According to Moore's records, McPherson had never gone into a diabetic acidosis.

Moore wrote out four separate work restrictions for McPherson for the following dates: August 28, 2001 through September 4, 2001; September 4, 2001 though September 11, 2001; September 18, 2001 though September 25, 2001; and September 25, 2001 until an undetermined date when he sees a specialist. The August 28, 2001 through September 4, 2001 work restriction was in effect because McPherson was hospitalized for out-of-control diabetes. The rest of the time period for which McPherson was under work restriction was so that he could stay home and try to get his

----

[1]An A-1-C test reflects the average blood sugar level over a one-month period.

blood sugar under control. In Moore's opinion, during McPherson's last visit in January 2005 there was nothing about McPherson's condition restricting him from working.

Endocrinologist Dr. Lakshmi Krishnamurthi ("Krishnamurthi") treated McPherson from October 2, 2001 through November 1, 2001. Krishnamurthi testified that McPherson's blood sugar was high and that McPherson reported fatigue, frequent urination, and vision problems. In response, Krishnamurthi adjusted McPherson's insulin dosage. Krishnamurthi treated McPherson for four or five weeks during which time McPherson's blood sugar, neuropathy,[2] and vision improved enough so that he could return to work.

During the treatment period, Krishnamurthi provided McPherson with two statements excusing him from work. The first form excused McPherson from work from October 2, 2001 through October 12, 2001. The second form was dated October 12, 2001 and excused McPherson for two to three weeks.

Federal Express's attendance policy during this time period stated that an employee "voluntar[ily] resign[s]" from Federal Express when, for two consecutive days, he or she is either absent without notifying management or is unavailable for work and does not have an acceptable excuse. J.A. at 340 (People Manual). Federal Express further required absent employees to furnish a physician's statement upon request. While McPherson was out of work as the result of his high blood sugar, his supervisor, Fred Jacobs ("Jacobs"), alleged that he did not receive documentation from McPherson clearing him for medical leave. Jacobs sent McPherson several letters warning him that failure to provide documentation could result in termination. Federal Express terminated

---

[2]Neuropathy is nerve damage. For diabetics, it is caused by high blood sugar and results in aches, pains, cramps, or burning in the lower extremities.

McPherson on October 22, 2001, stating that McPherson's failure to communicate with Jacobs had resulted in McPherson's voluntary resignation.

McPherson filed a complaint in federal district court alleging that by terminating him, Federal Express violated both federal and state laws proscribing disability discrimination.[3] Federal Express moved for summary judgment, and on November 14, 2005, the district court entered a judgment granting Federal Express's motion on the basis that McPherson had not established that he was "disabled" as defined by the ADA. J.A. at 34 (Order at 13); J.A. at 36 (J.). On November 18, 2005, McPherson filed a Federal Rule of Civil Procedure 60(b) motion which the district court denied on December 6, 2006. On January 4, 2006, McPherson filed a Notice of Appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291. *See also* FED. R. APP. P. 4(a)(4)(A)(vi).

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's order granting summary judgment. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(c).

---

[3]McPherson has forfeited his state-law claim on appeal, making no argument with respect to this claim except to point out that the Tennessee Human Rights Act is the state law corresponding to the ADA. McPherson Br. at 3. *See United States v. Reed*, 167 F.3d 984, 993 (6th Cir.), *cert. denied*, 528 U.S. 897 (1999) (stating that a party forfeits an argument on appeal when it is mentioned in only a cursory manner with no further development).

**B. ADA Discrimination Claim**

The ADA prohibits employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Because McPherson's disability-discrimination claim is based on circumstantial evidence, we apply the *McDonnell Douglas* burden-shifting framework.[4] *Walsh v. United Parcel Serv.*, 201 F.3d 718, 725 (6th Cir. 2000). "[T]he plaintiff must first submit evidence from which a reasonable jury could conclude that a prima facie case of discrimination has been established." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007).

In this case, McPherson must establish that 1) he is disabled; 2) he is otherwise qualified for the job, with or without reasonable accommodation; 3) he suffered an adverse employment action; and 4) he suffered this adverse employment decision under circumstances giving rise to an inference of unlawful discrimination. *See id*. at 365 ("We must keep in mind [] that . . . various context-dependant ways [exist] by which plaintiffs may establish a prima facie case . . . .") (emphasis removed).

At issue is the first element of the prima facie case—whether or not McPherson is "disabled." The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one

---

[4]McPherson makes passing mention that this is a direct evidence case, but makes no argument in support of this contention. McPherson Br. at 12 ("In a direct evidence case, such as this one, the Defendant will then bear the burden of establishing any affirmative defenses."). Accordingly, McPherson has forfeited this argument. *See Reed*, 167 F.3d at 993.

or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

We must decide whether the district court erred in determining that McPherson did not have "a physical or mental impairment that substantially limit[ed] one or more of [McPherson's] major life activities."[5] *Id*. As all parties agree that McPherson suffers from a physical impairment, in that he is an insulin-dependant diabetic,[6] we may further narrow the issue before us to the question of whether McPherson's diabetes "substantially limit[ed] one or more of [McPherson's] major life activities." *Id*.

"[W]hether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). The standard for qualifying as "disabled" is "demanding" and courts must interpret strictly the terms "major life activities" and "substantially limits" in making the disability determination. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002). McPherson must identify a "major life activity" and show that his diabetes "substantially limits" his performance of that "major life activity."

---

[5]Although McPherson made an argument in the district court that he was "regarded as" disabled, because he has not presented this theory on appeal, he has forfeited this argument. *See Reed*, 167 F.3d at 993.

[6]A "physical impairment" is defined as
[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.
29 C.F.R. § 1630.2(h)(1).

## 1. The Major Life Activities at Issue are Seeing and Self-Care

Regulations issued to provide interpretive guidance for terms found in the ADA define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).[7] Although this list is not meant to be exhaustive, 29 C.F.R. Pt. 1630.2, App. § 1630.2(i), all of the major life activities at issue in this case do appear in this list.

In the district court, McPherson argued that the major life activities at issue were eating, self-care, and seeing. On appeal, McPherson states "the major life activities that 'out of control' diabetes affected were identified by the physicians as: problems in seeing[;] having to take daily insulin shots several times a day[;] having to regularly monitor his sugar levels[;] having to take periods off work (short term disability)[;] having pain and cramps in his lower extremities[;] [and] having to be under regular medical care." McPherson Br. at 14. McPherson also asserts that his need to take six insulin shots daily impacted his ability to perform self-care and to work. *Id*. at 15.

As McPherson makes no mention of eating on appeal, he has forfeited this argument. *See Reed*, 167 F.3d at 993. Further, to the extent that McPherson's list might encompass the major life activities of walking or working, McPherson cannot raise these theories for the first time on appeal.[8]

---

[7]"While Congress has not assigned authority to a federal agency to issue regulations defining the terms . . . 'substantially limits,' or 'major life activities,' the parties accept the EEOC's regulatory interpretation of these terms and this court assumes 29 C.F.R. § 1630.2[] (i), and (j) are reasonable." *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 314 (6th Cir. 2001). *See* McPherson Br. at 11-12; Federal Express Br. at 12 (citing the pertinent regulations).

[8]McPherson made an argument about the major life activity of working in the district court, but there he discussed working only as it pertained to his "regarded as" disabled theory, a theory which he has forfeited on appeal. *See supra* note 5. To the extent that McPherson is now arguing that he is, in fact, substantially limited in the major life activity of working, this is a distinctly different theory which was never argued in the district court.

*See Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993) ("In general, issues not presented to the district court but raised for the first time on appeal are not properly before the court.") (alteration and internal quotation marks omitted). The only two major life activities which McPherson properly raised both in the district court and on appeal are seeing and self-care; accordingly, we consider only these two major life activities.

2. **McPherson Has Not Demonstrated that His Diabetes Substantially Limited the Major Life Activities of Seeing and Self-Care.**

"Substantially limits" means:

(i)  Unable to perform a major life activity that the average person in the general population can perform; or
(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1)(i)-(ii). In determining whether a person's limitations are substantial, we consider "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(i)-(iii). Further, the plaintiff's evidence that his or her impairment is substantially limiting must derive from his or her own experience. *Toyota Motor Mfg.*, 534 U.S. at 198.

Although McPherson's brief never makes a clear argument connecting the dots between how his diabetes substantially limits the major life activities that he has identified, the most generous interpretation of McPherson's argument is that the testimony of Moore and Krishnamurthi demonstrate that McPherson was substantially limited in the major life activities of seeing and self-care.

McPherson argues that Moore's and Krishnamurthi's testimony demonstrates that McPherson "required regular monitoring and medical care," and that "[t]his evidence points to [McPherson's] disability status." McPherson Br. at 10. This vague and conclusory argument is easily dismissed. The fact that McPherson needed to check his blood sugar regularly and to attend medical appointments does not establish that he was substantially limited in his ability to see or care for himself.

McPherson also asserts that the district court "ignored" Moore's and Krishnamurthi's testimony that McPherson suffered from "eye damage," "nerve damage," "neuropathy in lower extremities," and "aches and pains in legs." McPherson Br. at 10. First, this is factually false, as the district court order accurately recounted Moore's and Krishnamurthi's testimony about these symptoms. Further, the record does not establish that McPherson suffered from any permanent "eye damage," but only that McPherson earlier had trouble seeing, and that his vision had been improving. In addition, McPherson appears to be triple-counting, as the "neuropathy in lower extremities" encompasses the "nerve damage" and "aches and pains in legs." *See supra* note 3.

Second, the mere fact that McPherson has suffered from these maladies does not mean he was "substantially limited" in the "major life activity" of seeing. The record does not demonstrate and McPherson does not argue that he was unable to see relative to how well the general population can see, or that he was "[s]ignificantly restricted as to the condition, manner or duration under which" he could see "as compared to the condition, manner, or duration under which the average person in the general population can" see. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Further, the testimony of Moore and Krishnamurthi does not establish that McPherson's "eye damage" was "severe[],"

"permanent," or "long term." 29 C.F.R. § 1630.2(j)(2)(i)-(iii). To the contrary, Krishnamurthi testified that McPherson's vision was improving.

Third, the testimony about "eye damage," "nerve damage," "neuropathy in lower extremities," and "aches and pains in legs" does not establish that McPherson was substantially limited in his ability to care for himself. McPherson argues that we should infer that his ability to perform self-care was "impacted" by the fact that he had to go to the restroom to inject insulin six times per day. McPherson Br. at 15. McPherson is asking this court to speculate about whether the fact that he took insulin shots may have substantially limited his ability to engage in self-care. He does not assert that taking the insulin shots, *was* substantially limiting—in other words, he makes no claim that as the result of his diabetes he was unable to care for himself relative to how well people in the general population care for themselves, or that he was "[s]ignificantly restricted as to the condition, manner or duration under which" he could care for himself "as compared to the condition, manner, or duration under which the average person in the general population can" care for himself or herself. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Accordingly, we do not credit McPherson's argument. McPherson has not pointed to anything in the record supporting a nexus between his diabetes and a substantial limitation in his ability to see or to care for himself.

We finally note McPherson's half-hearted attempt at arguing that summary judgment was inappropriate because the district court did not make the EEOC's reasonable-cause letter part of the record. McPherson Br. at 15. McPherson does not make any legal argument, but merely asserts that "while the district court [was] not bound by the EEOC cause determination, [the cause determination] should be sufficient to overcome a summary judgment motion such that the case can

10

be submitted before a jury." *Id*. Because McPherson has (once again) failed to develop this argument in any meaningful manner, we consider it forfeited. *Reed*, 167 F.3d at 993.

### III. CONCLUSION

Because McPherson fails to demonstrate that he was "disabled" under the ADA, we **AFFIRM** the district court's order granting summary judgment in favor of Federal Express.