_____NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0057n.06
Filed: January 26, 2009

No. 07-5859

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| FREDERICK M. CREUSERE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ROSA L. WEAVER, et al., | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

**Before: GIBBONS and COOK, Circuit Judges; STEEH, District Judge.**[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant Frederick M. Creusere appeals the district court's dismissal of his 42 U.S.C. § 1983 civil rights action arising out of the administrative revocation of his teaching certificate. Because the defendants are immune from suit and because this suit is barred due to issue and claim preclusion, we affirm the judgment of the district court.

I.

The facts in this matter stem from incidents beginning during the 1994-1995 school year and include lawsuits in federal court and Kentucky state courts. The district court distilled the

_____

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

voluminous record to the following relevant facts:

> Plaintiff Frederick M. Creusere was certified as a secondary teacher and awarded his Bachelor of Science degree from the University of Kentucky in 1970. He earned his Master of Science degree from Eastern Kentucky University in 1972. In 1972, plaintiff moved to New Mexico as a Ph.D. candidate.
>
> Plaintiff later returned to Kentucky and, on August 12, 1994, he accepted a high school teaching and coaching position at Henry County Public Schools ("HCPS") in Kentucky. At the end of the 1994-1995 school year, plaintiff was evaluated by Principal Darrel Treece, who recommended that plaintiff not be re-hired for the following year.
>
> On April 7, 1995, the School Board mailed a letter to plaintiff terminating his contract and immediately relieving him of his coaching and teaching duties. It informed him that he would not be re-hired for the 1995-1996 school year, citing insubordination, incompetency, neglect, and conduct unbecoming a teacher.
>
> Plaintiff initiated a timely response to the termination, and a hearing on the matter was conducted. The hearing panel reinstated plaintiff for the remainder of the contract but again relieved him of all duties. The action was appealed to the Henry Circuit Court and the Kentucky Court of Appeals, each of which upheld the reinstatement for the remainder of the school year.
>
> On July 25, 1995, the Kentucky Education Professional Standards Board ("KEPSB") notified plaintiff that it had probable cause to conduct a certificate revocation hearing. Thereafter, plaintiff filed a federal lawsuit in the Eastern District of Kentucky challenging KEPSB's authority to revoke his teaching certificate and alleging violations of his civil rights. During the pendency of the federal action, the KEPSB held the certificate revocation hearing in abeyance.

*Creusere v. Weaver*, No. 99-101, slip op. at 1-3 (E.D. Ky. Mar. 20, 2007) ("*Creusere I*"). The

district court dismissed Mr. Creusere's federal lawsuit against the KEPSB in May of 1998, and the

KEPSB resumed proceedings to revoke Creusere's teaching certificate shortly thereafter. *Id.* The

district court went on to describe subsequent events as follows:

> During the intervening period, plaintiff became employed with the Covington Independent Schools ("CIS"). On April 9, 1999, the KEPSB amended its charges against plaintiff to include alleged wrongful conduct occurring during plaintiff's employment with the CIS. On May 5, 1999, the KEPSB filed an emergency request to suspend plaintiff's teaching certificate based on letters sent by plaintiff allegedly threatening physical harm to himself and others. The KEPSB entered a temporary order immediately suspending the certificate.

In response, plaintiff filed [this federal lawsuit] on May 24, 1999. The KEPSB scheduled an emergency suspension hearing for May 28, 1999 based on the threatening tones of plaintiff's letters. Plaintiff moved [the district court] for a temporary restraining order to enjoin the hearing, which the court denied. On May 28, 1999, an emergency suspension hearing was held, and plaintiff's teaching certificate remained suspended after that hearing on an emergency basis.

On June 23, 1999, the KEPSB defendants filed a motion to dismiss, which was fully briefed in September 1999. On October 22, 1999, [the district court] ordered that this case be held in abeyance pending plaintiff's exhaustion of his remedies under Kentucky law.

In 2001, the KEPSB imposed a final certificate revocation on plaintiff with a five-year waiting period before reapplication. Plaintiff appealed to the Franklin Circuit Court which, after taking proof, overruled the appeal and affirmed the order of the KEPSB. Plaintiff appealed to the Kentucky Court of Appeals which, on July 15, 2005, issued an opinion rejecting all of his arguments and affirming the Franklin Circuit Court. On April 12, 2006, the Kentucky Supreme Court denied discretionary review.

*Creusere I*, slip op. at 3-4. Creusere then filed a 42 U.S.C. § 1983 claim in the United States District

Court for the Eastern District of Kentucky. Defendants[1] moved to dismiss, and the district court

---

[1]The defendants-appellees fall into three separate categories: the KEPSB members, Matthew Mooney, and the *pro se* defendants. The KEPSB members are those individuals employed by KEPSB: Rosa L. Weaver, Terry Jean Poindexter, Marcia Seiler, Doris Barlow, Tim Dedman, Sandra W. Harris, Cheryl Hayes, Frances Steenbergen, Beverly Tomlin, Zella Wells, Arletta M. Kennedy, Lydia Coffey, Jack D. Rose, Susan Leib, Gene Wilhoit, Joseph E. Early, Gregory McClellan, and Charles Wade.

Matthew Mooney's attorney submitted a separate brief on his behalf. Mooney claimed that only two issues in Creusere's brief pertain to Mooney: whether the district court properly dismissed the damage claims again Mooney based on judicial immunity, qualified immunity, or Eleventh Amendment sovereign immunity, or because the claims were moot. Mooney served as a hearing officer in the KEPSB administrative action against Creusere from September 10, 1998, until his voluntary recusal on June 9, 1999. At the time of the hearing, Mooney was married to Cheryl Lalonde Mooney, an employee of the Office of the Kentucky Attorney General's Civil Division's Boards and Agencies Branch, where she provides legal services to small administrative agencies. Ms. Mooney did not participate in any administrative action against Creusere. Creusere filed a motion to disqualify Mooney from the proceedings on May 24, 1999, and Mooney withdrew and disqualified himself as hearing officer on June 10, 1999.

Defendants-appellees Ruth H. Webb and Courtney T. Baxter are proceeding *pro se* and adopted the statements and arguments of Mooney's brief and KEPSB's brief on December 10, 2007, and December 12, 2007, respectively.

3

granted defendants' motion to dismiss on March 20, 2007, finding that: (1) Creusere's claims for money damages under 42 U.S.C. §§ 1981, 1983, and 1985 against the KEPSB members are barred based upon Kentucky's sovereign immunity under the Eleventh Amendment; (2) the individual KEPSB members are also entitled to absolute immunity; (3) in the alternative, the individual KEPSB members are entitled to qualified immunity; (4) Creusere's original claims are barred by the doctrines of issue and claim preclusion; (5) to the extent Creusere's claims seek review of the Kentucky state court decisions, they are barred by the *Rooker-Feldman* doctrine; and (6) Creusere's proposed amended claims against two new defendants, Curtsinger and Weber, are not barred by the statute of limitations due to equitable tolling; however, the district court declined to exercise its supplemental jurisdiction over those claims.

Creusere filed motions to obtain an injunction, a writ of prohibition or a writ of mandamus; to amend the district court's findings pursuant to Federal Rule of Civil Procedure ("FRCP") 52; to reopen, alter, amend, or vacate the judgment pursuant to FRCP 59; to obtain summary judgment; and to receive reconsideration pursuant to FRCP 60(b). The district court stated that these motions were "essentially mov[ing] the court to revisit and alter its previous decision" but "provid[ing] no grounds upon which this court may disturb its decision." *Creusere v. Weaver*, No. 99-101 (E.D. Ky. June 14, 2007) (order denying Creusere's motions). The district court therefore denied the motions on June 14, 2007. Creusere submitted his *pro se* appellate brief to this court on November 6, 2007. Creusere advanced twenty arguments seeking relief, which are listed as follows:

> 1. The District Court erred by not understanding important facts for the history of this case, and facts necessary to decide this case.
> 2. Appellant Creusere did not receive a fair hearing before an independent and impartial decisionmaker in the state administrative process.

3. Appellant Creusere was denied a timely and meaningful hearing for his state administrative process and for his federal civil rights complaint.

4. The District Court erred by forcing Creusere to exhaust all state remedies for his § 1983 complaint and against his will to seek an appeal in a state court forum with few rights and a restricted review, denied a federal forum.

5. The District Court erred by denying Creusere his seventh amendment right to a trial by a jury of his peers for Creusere's federal claims.

6. The District Court erred when the court decided or disregarded questions of fact a jury should have determined.

7. The District Court erred when the court did not review Creusere's evidence and sworn affidavits in a light most favorable to Creusere, including speech retaliation/mental health issues, while dismissing the Appellees.

8. The District Court erred and abused its discretion by not issuing a timely and meaningful injunction in 1999.

9. The District Court erred and denied Creusere his first amendment right to seek a Court legal redress and its result in his favor, by allowing an administrative board to countermand a Court decision.

10. The District Court erred by comparing Creusere's school district due process rights to an internal prison procedure.

11. The District Court erred by not protecting and upholding Creusere's 1996-97 satisfactory teaching determination by Covington schools.

12. The District Court erred by not permitting Creusere to amend his original complaint to clarify original claims and issues and add those occuring [sic] thereafter arising from the original nucleus of facts and issues in 1999.

13. The District Court erred by not hearing Creusere's constitutional liberty claims resulting from untrue disseminations to others.

14. The District Court erred by dismissing the Appellees, disregarding Creusere's undisputed affidavits and motions for summary judgment.

15. The District Court erred and abused its discretion by not granting Creusere's Motion for a Writ of Prohibition and/or Mandamus, etc. wrongly stating it lacked jurisdiction to do so.

16. The District Court erred by dismissing the Appellees functioning simultaneously as complaining party, prosecutor and decisionmaker when no absolute immunity existed in 1871 for this agency tri-function, and for constitutional violations and administrative functions clearly not adjudicative.

17. The District Court erred by dismissing the Appellees on the grounds of qualified immunity, and not addressing Creusere's claims.

18. The District Court erred by dismissing the Appellees on the grounds of sovereign immunity, applying a wrong version of KRS 161.028 not in effect in 1994-2000 and ignoring KEPSB actions for matters outside of Ky.

19. The District Court erred by dismissing the Appellees on grounds of issue and claim preclusion and the Rooker-Feldman doctrine.

20. The District Court denied Creusere equal protection under the law and threw out the entire mental health profession by its abeyance.

Brief for Appellant at 2-3, *Creusere v. Weaver*, ___ F.3d ___ (6th Cir. 2008) (No. 99-101).[2]

II.

While there is conflicting authority from this court about whether we must resolve a sovereign-immunity defense before proceeding to the merits,[3] we generally consider jurisdictional matters before reaching the merits. *See Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th

---

[2]As an initial matter, we note that this case was submitted on the briefs, as is customary in this court when a party is *pro se*. Creusere, however, elected to attend court the day the case was to be submitted, even though argument was not scheduled. He has filed a post-submission motion or complaint, addressed to Chief Judge Danny Boggs and forwarded to this panel since Chief Judge Boggs is not a part of the panel assigned to the case. In the motion, he claims that there were "open court laughter and ridicule by the judges" that indicate bias in his case. Subsequent to this filing, he has filed a misconduct complaint against the panel.

Creusere mischaracterizes and misunderstands what occurred in court. When his case was called, for the sole purpose of noting that it was to be submitted on the briefs, the deputy clerk read the lengthy style of the case, including the full name of each defendant. There were brief, light comments (misquoted by Creusere in his motion) directed at the deputy clerk about his choice to read the full style rather than use a shortened version, as would be more typical. No one made a comment indicating bias or relating in any way to the merits of the case. Any laughter was similarly not related to the merits or the parties, but to the court's own employee.

To the extent Creusere's filings are construed as a motion for recusal, the motion is denied. The statute 28 U.S.C. § 455(a) provides that: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." §455(b) states that a judge shall also recuse himself if "he has a personal bias or prejudice concerning a party." Recusal is an objective standard and is not based on the subjective viewpoint of a party. *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989).

In order for recusal to be justified, a judge's prejudice or bias must be personal, emanating from some source other than participation in the judicial proceedings. *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005). The insignificant events when this case was called do not satisfy the objective standard for recusal or indicate bias on the part of the panel, let alone the sort of personal, extrajudicial bias requiring recusal.

[3]*See Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 473-77 (6th Cir. 2006) (collecting cases).

6

*Creusere v. Weaver, et al.*, No. 07-5859

Cir. 2002). Creusere argues on appeal that the district court erred in finding that his motions for injunctions against the defendants were barred by Kentucky's Eleventh Amendment sovereign immunity. Whether Eleventh Amendment sovereign immunity exists in any particular case is a question of constitutional law that this court reviews *de novo. Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (*en banc*). The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In addition to the states themselves, Eleventh Amendment immunity can also extend to departments and agencies of states. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). To determine whether an entity is a state department or agency for purposes of the Eleventh Amendment, the primary issue is whether the state itself would be liable for money damages against the entity. *Brotherton v. Cleveland*, 173 F.3d 552, 560-61 (6th Cir. 1999). Courts also look to such other factors as how state law defines the entity and the degree of control the state exercises over the entity. *Id.* at 561.

KEPSB was created by Kentucky statute and is an agency of Kentucky's state government, which exercises control over KEPSB and provides its funding. *See* KRS § 161.028(1) ("[The Board is] an agency and instrumentality of the Commonwealth, in the performance of essential governmental functions."). There is no serious doubt in this case that KEPSB is a government agency that therefore enjoys Eleventh Amendment sovereign immunity against Creusere's claims for money damages.

Although individual members of KEPSB are also immune from suit for money damages,

7

*Edelman v. Jordan*, 415 U.S. 651, 666 (1974), the Eleventh Amendment does not bar an injunction to prohibit a state official from enforcing a state statute that violates the United States Constitution, *Ex parte Young*, 209 U.S. 123, 167 (1908). To determine whether an injunction can be enforced against a state official, a court should conduct a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring) (internal quotation marks omitted)).

Creusere seeks a permanent injunction "prohibiting the Appellees from disseminating statements or documents to others falsely indicating the Appellant has engaged in criminal conduct or that the Appellant has anger management problems and is dangerous to himself or others, requiring compelled mental health treatments as a condition for reinstatement of his teaching certificate." He also seeks a permanent injunction prohibiting the defendants from releasing his Social Security number to any other individual.

Creusere cannot meet his burden because he has failed to allege an ongoing violation of federal law. His requests for injunctive relief therefore do not satisfy the requirements of *Ex parte Young*. *See Verizon*, 535 U.S. at 645. To the contrary, his motion for an injunction merely repeats his various complaints about how KEPSB has treated him in the past. He points to no cases stating that it is a violation of federal law to impose conditions on an applicant in order to be recertified as a teacher. Furthermore, we have held that the disclosure of an individual's Social Security number does not implicate a constitutional privacy interest. *Lambert v. Hartman*, 517 F.3d 433, 445 (6th Cir.

2008). Since Creusere is merely seeking to relitigate retrospective harms rather than to prevent prospective violations of federal law, his request for injunctive relief does not fit within the *Ex parte Young* exception to Eleventh Amendment immunity and is therefore barred by the Eleventh Amendment.

III.

The district court found that the individual board members were entitled to absolute immunity. This court reviews a district court's grant of summary judgment on the basis of absolute immunity *de novo*. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Absolute immunity against suits for money damages is "well established" for judges, and such immunity has also been extended to non-judicial officers performing "quasi-judicial" duties. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). Quasi-judicial immunity "extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.*

The Supreme Court held in *Butz v. Economou* that "adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be [absolutely] immune from suits for damages." 438 U.S. 478, 512-13 (1978). Courts must use a functional approach to determine whether an official is entitled to absolute immunity. Under this approach, courts look to "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988) (internal quotation marks

9

omitted)).[4]

In this instance, the Standards Board members qualify for absolute immunity. They performed a traditional adjudicatory function of deciding facts in this disputed action, applying law, and resolving the case against Creusere on its merits. KEPSB decided the significant issue of whether to strip Creusere of his teaching license, an action which has an enormous impact on Creusere's ability to pursue his career. KEPSB also utilized multiple safeguards in its procedures; Creusere received notice, an opportunity to be heard, and judicial review. *See Watts v. Burkhart*, 978 F.2d 269, 275-76 (6th Cir. 1992) (emphasizing the procedural safeguards in place and finding that medical examiners qualified for absolute immunity).

Creusere contests whether absolute immunity should apply, stating that such immunity did not exist in 1871.[5] Creusere also states that retaliation for protected First Amendment speech is unconstitutional, as is retaliation for the exercise of legal redress. However, he offers nothing to

---

[4]In an unpublished case in 1999, we cited with approval a First Circuit test to determine when to apply quasi-judicial immunity:

> First, does a Board member, like a judge, perform a traditional 'adjudicatory' function, in that he decides facts, applies law, and otherwise resolves disputes on the merits (free from direct political influence)? Second, does a Board member, like a judge, decide cases sufficiently controversial that, in the absence of absolute immunity, he would be subject to numerous damages actions? Third, does a Board member, like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect a [defendant]'s constitutional rights?

*Hale v. Cody*, 1999 U.S. App. LEXIS 21039, at *4 (Aug. 27, 1999) (quoting *Watts*, 978 F.2d at 278) (internal quotation marks omitted).

[5]Creusere is presumably referring to the year in which Congress passed the statute currently codified at 42 U.S.C. § 1983, but he is wrong in stating that absolute immunity did not exist then. "[T]he doctrine of absolute immunity for members of tribunals performing a judicial function was well established in 1871 . . . ." *Watts*, 978 F.2d at 275.

suggest he is being retaliated against here. Moreover, he is barred by issue preclusion from making such an argument. *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 367-68 (6th Cir. 2007) (precluding the plaintiff from relitigating disputed issues of fact when the Kentucky state court system had already ruled on these issues).

Creusere's claims against Mooney also fail because Mooney is immune from suit. First, Creusere failed to develop fully his claims against Mooney in his appellate brief. He briefly discussed the claims in the Statement of the Case Section, alleging that the Mooneys had a "pecuniary interest with the KEPSB" and that Mooney downplayed his wife's potential conflict of interest. Nevertheless, Creusere failed to demonstrate how this harmed him or what further actions Mooney could have taken, particularly since Mooney voluntarily recused himself to eliminate any potential for conflict. Creusere's failure to develop sufficiently the substance of his claim against Mooney waives the claim. *Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (holding the appellant's claim was waived where she "failed to discuss or cite to the district court's analysis in any detail" with no real "effort at developed argumentation" (internal quotation marks omitted)). Second, even if Creusere's claims against Mooney were not waived, his actions in conducting an administrative hearing for a state agency were protected by absolute quasi-judicial immunity. *Dixon v. Clem*, 492 F.3d 665, 674-75 (6th Cir. 2007) (setting forth framework and finding administrative officer immune from suit). Creusere's claim against Mooney was thus properly dismissed.

## IV.

The district court found, in the alternative, that the individual board members were entitled

to qualified immunity. This court reviews a district court's grant of qualified immunity *de novo*. *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006). Qualified immunity "shields governmental officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007) (internal quotation and citation omitted). In resolving questions of qualified immunity, we proceed in two steps. First, we determine whether "[t]aken in the light most favorable to the party asserting the injury[,]. . . the facts alleged show the officer's conduct violated a constitutional right." *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001) (internal quotation marks omitted)). If this question is answered in the affirmative, we next ask "whether the right was clearly established . . . in light of the specific context of the case." *Scott*, 127 S. Ct. at 1774 (quoting *Saucier*, 533 U.S. at 201); *see also Estate of Bing v. City of Whitehall, Ohio*, 456 F.3d 555, 569 (6th Cir. 2006).

"For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003) (internal quotation marks and citation omitted). Although the very action in question need not have been previously held unlawful, unlawfulness can be "apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Id.* (citing *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)). *See also Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco and Firearms,* 452 F.3d 433, 447 (6th Cir. 2006) (quoting *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (alteration in original)) ("A right

is 'clearly established,' the Supreme Court has said, when it is no longer among the 'hazy' area of constitutional issues that might be 'reasonably misapprehend[ed]' by a law enforcement officer at the scene."). Overall, because "reasonable mistakes can be made as to the legal constraints on particular police conduct," *Saucier,* 533 U.S. at 205, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Where a defendant raises a qualified immunity defense, the plaintiff bears the burden of proving that officers are not shielded by qualified immunity. *Livermore*, 476 F.3d at 403. "The issue of qualified immunity may be submitted to a jury only if the legal question of immunity is completely dependent upon which view of the [disputed] facts is accepted by the jury." *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (internal quotation marks and citation omitted) (alteration in original).

Creusere alleges that KEPSB failed to follow its own procedures because it did not give him a copy of a report in 1995 and did not hold a hearing in a timely fashion after charges were brought against Creusere. Even taking these allegations as true, it is not a constitutional violation for a state agency not to follow its own procedures. *See Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995) ("A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."). Therefore, KEPSB's alleged failure to give a copy of the report to Creusere is not a constitutional violation, nor is its delay in holding a hearing.[6] Since no constitutional violation occurred, the

---

[6]It is worth noting that Creusere had filed a lawsuit challenging KEPSB's authority to begin license revocation proceedings against him. If Creusere had succeeded in that lawsuit, "any hearing

*Creusere v. Weaver, et al.*, No. 07-5859

KEPSB members are entitled to rely upon qualified immunity for their actions.

V.

The district court also found that Creusere's claims were barred by the doctrines of issue and claim preclusion. We review *de novo* a district court's decision regarding issue or claim preclusion because it is a question of law. *Stemler v. City of Florence*, 350 F.3d 578, 585 (6th Cir. 2003). "The Full Faith and Credit Act, 28 U.S.C. § 1738, . . . requires the federal courts to give the same preclusive effect to a state-court judgment as another court of that State would give." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (internal quotation marks and citation omitted). Therefore, in cases where there is parallel federal and state court litigation, "a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment." *Id.*

Under Kentucky law, issue preclusion applies if four elements are met:

> First, the issue in the second case must be the same as the issue in the first case. Second, the issue must have been actually litigated. Third, even if an issue was actually litigated in a prior action, issue preclusion will not bar subsequent litigation unless the issue was actually decided in that action. Fourth, for issue preclusion to operate as a bar, the decision on the issue in the prior action must have been necessary to the court's judgment.

*Yeoman v. Commonwealth*, 983 S.W.2d 459, 465 (Ky. 1998) (internal citations omitted). In addition, if a state agency is acting in a judicial capacity, a federal court "must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Davet v. City of Cleveland*, 456 F.3d 549, 552 (6th Cir. 2006) (quoting *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986)).

---

would have been moot and a waste of time." *Creusere I*, slip op. at 10. Thus their delay was not only constitutional but also reasonable given the pending lawsuit.

14

Creusere's claims meet all four elements above and thus are barred by issue preclusion. "The Kentucky Court of Appeals decision makes clear that plaintiff litigated and lost in the Kentucky state court proceedings all the issues he raises here against the KEPSB defendants." *Creusere I*, slip op. at 13. Creusere's claims were heard and rejected by the Kentucky courts, including, *inter alia*, his claims that he was prejudiced by KEPSB's delay in conducting certificate revocation proceedings; that he was denied a fair and impartial hearing; that he was unfairly prejudiced by a mental health expert's testimony at the proceedings; that KEPSB exceeded its authority by putting into evidence letters protected by attorney-client privilege; and that the KEPSB revocation decision was not based on substantial evidence and that it denied his due process rights and his right to pursue his chosen career.

This case bears a striking similarity to *Macy*, 484 F.3d at 360. In that case, Sharon Macy alleged that the school board fired her because of her disability and in retaliation for engaging in protected activities. *Id*. The school board claimed that Macy "was fired for threatening students and making inappropriate remarks about the students and their families." *Id*. The district court granted the school board's motion for summary judgment, concluding that Macy did not present sufficient evidence for a jury to find that she was fired due to her disability and in retaliation. We affirmed, finding that Macy was barred from denying the underlying inappropriate incidents by the doctrine of issue preclusion. *Id.* at 367. "Macy has already litigated the underlying issue twice, and has not presented any new evidence or any other reason suggesting why litigating it a third time would be appropriate." *Id.* at 367 n.5. We held that "she is precluded from arguing [the same issue] in federal court." *Id.* at 368.

15

*Creusere v. Weaver, et al.*, No. 07-5859

Like Macy, Creusere has already litigated the underlying issues regarding the revocation of his teaching certificate. The issues were actually litigated and decided in the state court action. Creusere's arguments were heard by the KEPSB, Franklin Circuit Court, and the Kentucky Court of Appeals. Finally, the prior decision was necessary to the prior court's judgment because it addressed Creusere's claims that his teaching license was unfairly revoked and that his rights were being denied. Therefore issue preclusion operates to bar relitigation of the underlying claims in this case.

Claim preclusion operates to bar further litigation under Kentucky law where three elements are present: 1) identity of parties, 2) identity of the causes of action, and 3) the action has been resolved on the merits. *Stemler*, 350 F.3d at 588. In this case, there is an identity of parties and causes of action, because Creusere litigated these claims against the same parties in Kentucky state court. The Kentucky state court finally resolved Creusere's claims on the merits. Therefore, claim preclusion also operates as a bar to rehearing Creusere's claims.

VI.

The district court found that Creusere's proposed amended claims that seek review of state court decisions were barred by the *Rooker-Feldman* doctrine. We review that ruling *de novo*. *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006) (citation omitted). The *Rooker-Feldman* doctrine emanated from two cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), in which the losing parties in state court filed suit in federal court after the state proceedings ended, complaining that the state court judgment caused the party to be injured and seeking federal review and rejection of the state

16

court judgment. The Supreme Court clarified the scope of the *Rooker-Feldman* doctrine in 2005:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil Corp.*, 544 U.S. at 284. Thus, *Rooker-Feldman* primarily bars claims that seek relief from injury caused by the state court judgment. *In re Hamilton*, 540 F.3d 367, 372 (6th Cir. 2008).

Although Creusere at times appears to collaterally attack the judgments of the Kentucky state courts in his brief, his primary arguments are allegations that the district court committed various errors. The *Rooker-Feldman* doctrine does not apply to these arguments that Creusere advances because Creusere is not claiming that the state court judgment injured him. In addition, the district court erred in applying the *Rooker-Feldman* doctrine in this case since Creusere initially filed suit in federal court and the district court ordered that suit held in abeyance while state court proceedings went forward. The district court's error in finding that the *Rooker-Feldman* doctrine applied was harmless, however, since Creusere's claims are nevertheless barred by issue and claim preclusion. *See Exxon Mobil Corp.*, 544 U.S. at 282 ("Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law.").

VII.

The district court declined to exercise supplemental jurisdiction over Creusere's proposed amended claims against proposed new defendants Curtsinger and Weber. We review a district court's refusal to exercise supplemental jurisdiction under the deferential abuse-of-discretion

standard. *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 583 (6th Cir. 2007). Creusere proposed to amend his complaint to add Mona Curtsinger and Allison Weber, two members of the KEPSB, alleging that the two women disseminated false statements about him in 2001 to the New Mexico Department of Education and to a national information clearinghouse. *Creusere I*, slip op. at 15. Creusere specifically argued that they falsely accused him of criminal activity and anger management and other mental health issues. Creusere did not specify whether he meant to state a § 1983 claim or a tort claim for defamation, but since his briefs used the language of defamation, the district court construed the allegations as a basis for a state law defamation claim. *Creusere I*, slip op. at 15-16. Although he filed these claims after the one-year statute of limitations, the district court used the doctrine of equitable tolling to conclude that the motion to add the two defendants would be considered timely since Creusere filed the claims within one year after the stay lifted. The district court's stay had held the federal proceedings in abeyance until the end of state court proceedings. However, since these claims presented state law allegations with no federal question, the district court declined to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

The relevant statute, 28 U.S.C. § 1367(c)(3), states that a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all other claims over which it had original jurisdiction. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1254-55 (6th Cir. 1996). Because the district court dismissed Creusere's federal claims, it was a proper exercise of its discretion to decline to exercise supplemental jurisdiction over these proposed state

law claims.

VIII.

For the foregoing reasons, we affirm the judgment of the district court and dismiss Creusere's

claims.